293 N.J. Super. 151 (1996)
679 A.2d 745
LINDA PECK, PLAINTIFF-APPELLANT,
v.
IMEDIA, INC. AND MERLE BENNY JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1996.
Decided August 6, 1996.
*154 Before Judges SHEBELL, STERN and NEWMAN.
Tina Velantzas-Austin argued the cause for appellant (Ms. Velantzas-Austin, on the brief and reply brief).
Edward F. Broderick, Jr., argued the cause for respondents (Broderick, Newmark & Grather, attorneys; Mr. Broderick, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
While doing part-time free-lance work for defendant, Imedia, Inc.,[1] plaintiff was offered a full-time job. After she accepted, but prior to commencing the full-time position, defendant rescinded the offer. The trial judge granted defendant's summary judgment motion dismissing plaintiff's subsequent complaint.
Plaintiff appeals and contends that defendants breached an employment contract; that she was deprived of the "protection" of defendants' employee manual; that since she relied on defendants' offer by moving to New Jersey and giving up her desktop publishing business in Boston, she was entitled to recovery under the theory of promissory estoppel, and that, in any event, there were genuine issues of material fact for trial.
*155 Because of the nature of a summary judgment motion, we recite the facts favorable to plaintiff on which she asserts a basis for relief.
In 1984 plaintiff moved from New Jersey to Boston where she subsequently held various positions in the communications industry. In February 1989 she decided to go "out on [her] own" in the desktop publishing business. In the beginning of 1993, while she was visiting a friend in New Jersey, plaintiff saw an advertisement for a free-lance advertising position with defendant. When she returned home to Boston, she sent a letter to defendant and applied for the position. In the letter she stated that "I am relocating to the Northern New Jersey area and would like to become an integral part of an advertising/marketing firm such as yours in the capacity of design/page layout/marketing professional." After receiving plaintiff's letter, defendant Merle Benny, defendant's vice president, called plaintiff and told her that she "was very interested in [plaintiff's] background" and that she "would be interested in talking to [plaintiff] whenever she could come down."
In April 1993, plaintiff met with Benny at Imedia's office in Morristown. As a result of the meeting, plaintiff started doing "free-lance" work for defendant. Plaintiff worked for defendant two to four days a week and on some weekends doing "production work." Defendant paid plaintiff $35 an hour or $280 a day, "whichever worked out best" for her.
After plaintiff started doing the free-lancing work with Imedia, Brian McAreavy, defendant's fiscal officer, suggested to plaintiff that she should consider working for Imedia on a full-time basis. McAreavy thought that defendant could save on the free-lance rates by hiring a full-time employee. Plaintiff told Benny that she "was open to considering an opportunity at Imedia". However, according to plaintiff she also told Benny that she "was concerned with the difference in life-styles between Boston, Massachusetts and Morristown, New Jersey" and that in Morristown there was a *156 "lack of night life and single life-style that exists prevalently in Boston."
On May 25, 1993, Benny sent plaintiff a letter offering her the position of "Desktop Publishing Manager" at an annual salary of $37,500. The letter attached a "detailed position description ... as well as information on our benefits" and added "[a] complete employee manual will be given to you when you start." (Emphasis added.)
On June 1, 1993, plaintiff declined the offer in a letter to Benny, which stated, in part:
I have agonized over this decision because although the position is just what I was looking for, I have become unsure about relocating back to New Jersey. When I first started working on a free-lance basis for you, I was set on moving back to New Jersey. But after a time, I found myself looking forward to returning to Boston.
Over the past eight years, I have developed a home here in Boston complete with good friends and wonderful personal and business contacts. I have thought long and hard about moving back to New Jersey, and with your offer, the idea is very appealing, but I must decline to accept your offer. I want you to know how difficult this decision was and all due to your terrific organization and the people who work there. Yours is a very special organization, but I cannot bring myself to leave Boston.
In her letter, plaintiff also offered to work "a part-time schedule" from her Boston office until defendant could find a full-time candidate and offered to train the recruit, if defendant so desired.
In response to the letter, McAreavy called plaintiff and advised her that the salary was negotiable. Plaintiff responded that "the money seemed fine" but she turned down the offer because she "enjoyed Boston" and had friends and clients there.
After the conversation with McAreavy, plaintiff reconsidered defendant's offer. In her words, she
had gone back to the offer letter, as well as the job responsibilities, and really looked them over more on a job basis than as a leaving Boston basis ... how [she] could benefit as well as serve an organization.... When [she] looked at it from that point of view, [she] did have second thoughts about staying in Boston....
As a result, plaintiff called McAreavy and told him that she would reconsider defendant's offer if they would increase the salary to between $44,000 and $45,000. He passed the message on *157 to Benny who spoke with plaintiff by phone on Sunday evening, June 6, 1993.
On June 8, 1993, Benny sent plaintiff a letter in which she wrote, "I am glad we had the opportunity to talk on Sunday and would like to express once again, that we would like to have you join us at Imedia." She increased the salary offer to $41,000 and stated that "[a]ll other information is included in [her] May 25th letter ... would still apply."
After receiving the letter, plaintiff called Benny, who was unavailable, and requested to speak to McAreavy. Plaintiff told him that she "would like very much to accept their offer" of employment at the new salary. She asked McAreavy whether Imedia would be willing to pay for her moving expenses, and he stated that defendant "would not be in a position" to do that.
Plaintiff did not ask for an employment contract and sent no confirming letter. Benny subsequently telephoned plaintiff to acknowledge plaintiff's acceptance of the position. They agreed on a starting date of July 18 or 19, 1993, and that in the interim, plaintiff would continue to work for Imedia "on a free-lance basis."
Benny also told plaintiff that she was needed that weekend to do an urgent production job and asked plaintiff to "come down." According to plaintiff, she agreed to "come down" on Friday, June 11, but told Benny that she could only stay until Sunday, June 13. Benny did not recall plaintiff telling her this, and plaintiff did not recall being advised that the job had to be completed before she returned to Boston.
Plaintiff worked on the project until Monday, June 14. However, she did not complete the project before returning home. Prior to leaving, plaintiff advised Benny of the status of the project and told her that she had to return to Boston since there was no one there to feed her cat. Plaintiff offered to take the file and complete the project in Boston. Benny stated this was the first time plaintiff advised her about a cat and that she had to return to Boston before completing the assignment.
*158 Benny expressed disappointment that the job was not completed. She voiced "some complaints to [plaintiff] about not completing the job that needed to be completed," and about her "being more interested in design than in desktop publishing." According to Benny, "the management team" had "concerns about [plaintiff's] work and her way of working" and questioned whether she would be able "to work with the rest of the staff" or "to do the job that needed to be done." Benny also heard complaints from Brian McAreavy that plaintiff was flirting with Imedia employees. As a result of plaintiff's conduct, defendant's management concluded that "we did not want her to be become an employee of IMEDIA because we did not think she would be a good addition to the staff." However, defendants did not advise plaintiff of their decision until Friday, June 25, 1993.
Plaintiff continued to do free-lance work for defendant until June 25, when Benny advised plaintiff that defendant was no longer interested in her services. According to plaintiff, Benny approached her and told her that "we've decided not to offer you this position." When plaintiff responded that she was already "moving down here for this job," Benny said "[n]o, you're not. You were going to move to New Jersey anyway." Plaintiff disagreed and told Benny that she "came down explicitly for this job," "rented" her apartment in Boston, "found an apartment" in New Jersey, "arranged for movers" and had "given up [her] clients in Boston." Plaintiff performed no further services for defendant.
In her complaint, plaintiff asserts that the parties entered into an employment agreement by which it was agreed "that plaintiff would work on a part-time basis from June 8, 1993 until July 19, 1993 at which time plaintiff would transfer to fulltime status" and that "July 19, 1993 was set as the first day of her employment as a fulltime employee." She further alleged that, in reliance
on this offer of a fulltime position with Imedia . .. [she] gave up her apartment in the Boston area and rented a more expensive apartment in New Jersey, hired a mover, gave up her business and career, and life in the Boston area which she *159 loved and moved to New Jersey at the cost of great emotional distress and economic loss.

I.
In granting summary judgment for defendants, the trial court noted that plaintiff "never received a[n employment] manual because she never began her employment with the defendant" and that defendant's employment manual, even if relevant, provided that any employee "can be fired at any time for cause, without cause, or for any reason whatsoever or for no reason at all." The judge, therefore, concluded that as plaintiff "could have been fired the day she arrived," she "certainly [could] be fired in advance of arrival." The trial court also noted that defendant's offer of employment did not include any guaranty of employment for a particular period of time and that plaintiff never asked for any such guaranty. To the contrary, according to the judge, plaintiff never advised defendant that she would not "leave Boston unless [defendant] gave [her a] contract that guarantee[d]" a period of employment. In essence, the judge granted summary judgment because plaintiff "came or was about to come down as an employee at will ... subject to the right of being terminated for cause, without cause for any reason or for no reason."
R. 4:46-2 provides that summary judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact ... and that the moving party is entitled to a judgment ... as a matter of law." Plaintiff is entitled to have the trial court "draw those reasonable inferences that are most favorable to [her] cause." Littman v. Gimello, 115 N.J. 154, 160, 557 A.2d 314, cert. denied, 493 U.S. 934, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) (quoting Portee v. Jaffee, 84 N.J. 88, 90, 417 A.2d 521 (1980)). Accord, Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 536, 666 A.2d 146 (1995) (on a motion for summary judgment, "the court must grant all the favorable inferences to the non-movant" in deciding *160 "`whether the evidence presents a specific disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill, supra, 142 N.J. at 536, 666 A.2d 146.

A.
Plaintiff asserts that the trial court erred in granting summary judgment since defendants breached an oral contract of part-time employment which was to last until she started working full-time. She contends that after she accepted defendants' offer, Imedia hired her on a part-time basis until she moved from Boston to New Jersey and that the contract of employment included a covenant of good faith and fair dealing. Defendants respond that plaintiff was merely a part-time independent contractor and that there is no covenant of good faith and fair dealing with respect to the retention of an independent contractor.
There is no claim that plaintiff ever completed an Internal Revenue Service W-2 form or an Immigration and Naturalization Service, I-9 form necessary for employment, that she received a copy of Imedia's employee manual incident to the commencement of her part-time work, or that defendant took any withholding from plaintiff's compensation or made social security, FICA, disability or unemployment payments to the State or Federal government. In the free-lance position, plaintiff was hired to do specific projects, and she billed defendants for her work. If she worked a complete day plaintiff was paid $280; if she worked only a few hours, she was paid $35 per hour. After plaintiff accepted the defendant's offer of full-time employment, she continued to bill defendants for her services as an independent contractor. Her "invoice" for June 1993 included days between June 11 and June 25 at either the daily or hourly rate. Plaintiff presented no evidence that defendants retained the right to control how plaintiff would do her work, and that she would turn in the final product when completed.
*161 In essence, the facts do not support an inference that plaintiff ever became an employee of Imedia, even on a part-time basis. See e.g., Fernandez-Lopez v. Jose Cervino, Inc., 288 N.J. Super. 14, 23-24, 671 A.2d 1051 (App.Div. 1996); Pollack v. Pino's Formal Wear & Tailoring, 253 N.J. Super. 397, 407-410, 601 A.2d 1190 (App.Div.), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992); Condon v. Smith, 37 N.J. Super. 320, 325, 117 A.2d 272 (App.Div. 1955), aff'd, 20 N.J. 557, 120 A.2d 460 (1956). Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 352, 382 A.2d 939 (App.Div. 1978).

B.
Plaintiff contends that the trial court, in any event, erroneously applied the employment-at-will doctrine to her case and argues that she had a contract for full-time employment which could only be terminated for cause. She contends that under Shebar v. Sanyo Business Systems Corp., 111 N.J. 276, 544 A.2d 377 (1988), "oral representations that were made ... on which [s]he relied by foregoing a job opportunity can transform plaintiff's at-will employment claim into employment with termination for cause only." She insists that by moving from Boston to New Jersey and giving up her desktop publishing business consideration was given for the promise of employment which was subject to termination only for cause.
In Shebar, plaintiff had tendered his resignation to take a job with the Sony Corporation. After submitting his resignation plaintiff was called into his supervisor's office and told that his resignation would not be accepted, that Sanyo never fired persons in plaintiff's job position, that he had a job with Sanyo for life, and that Sanyo would do anything to resolve his problems. Shebar rejected his other offer of employment. Nevertheless, four months after the conversation with his supervisor, he was fired by Sanyo.
Shebar held that plaintiff's circumstances created a "special contract with a particular employee [and] not a general agreement *162 covering all employees." 111 N.J. at 288, 544 A.2d 377. The Court held that
a factfinder could conclude that plaintiff gave valuable consideration for Sanyo's promise of continued employment with termination only for cause. The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification or destruction of a legal relation. If the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation.
Taking plaintiff's allegations as true, he agreed to relinquish his new position at Sony in exchange for job security at Sanyo. Sanyo, in turn, agreed to relinquish its right to terminate plaintiff's employment at will in exchange for the retention of a valued employee. Such bargained-for and exchanged promises furnish ample consideration for an enforceable contract.
[Id. at 289, 544 A.2d 377 (citations omitted).]
Hence, the fact finder could find that Shebar had a special contract relationship which guaranteed employment which could be terminated only for cause, but the Court cautioned "that not every relinquishment of a prior job or job offer constitutes additional compensation to support the modification of an at-will employment into employment with termination for cause only." Id. at 289-90, 544 A.2d 377. To the contrary, as the Court subsequently made clear in Bernard v. IMI Systems, Inc., 131 N.J. 91, 96, 618 A.2d 338 (1993), "in the absence of a contrary agreement, an employee is hired at-will ..." and "[t]oday both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms." Id. at 106, 618 A.2d 338.
Shebar is distinguishable from plaintiff's case. Plaintiff never worked for defendant as an employee; she worked as an independent contractor. Further, plaintiff presented insufficient facts to support a legitimate inference that defendant would discharge her only for cause or that her employment was for a specific period of time. Although the initial offer letter stated that she would be given an employee manual upon starting, plaintiff never saw the manual or signed a document stating that the manual applied to her upon her accepting the position. See, e.g., Brooks v. Key Pharmaceuticals Inc., 183 A.D.2d 1011, 583 N.Y.S.2d 673, 675 *163 (1992) ("... assuming that defendant's employee handbook created an express limitation on defendant's right to terminate, plaintiff still would not be entitled to recover because of her failure to" establish, as consideration for the offer, that she detrimentally relied on the terms of the handbook; ["p]laintiff accepted defendant's offer of employment without having seen defendant's employee handbook"). Cf. House v. Carter-Wallace, Inc., 232 N.J. Super. 42, 55, 556 A.2d 353 (App.Div.) ("[a]n employee cannot have a reasonable expectation of job security based on a document which was not distributed to him"), certif. denied, 117 N.J. 154, 564 A.2d 874 (1989); Ware v. Prudential Ins. Co., 220 N.J. Super. 135, 144, 531 A.2d 757 (App.Div. 1987) (an employee cannot reasonably rely on an internal management guide when it was not widely distributed to all employees and he had an employment contract stating he was an at-will employee), certif. denied, 113 N.J. 335, 550 A.2d 450 (1988).
Unlike Shebar, plaintiff had no "special contract" or contractual agreement with defendant that prevented Imedia from discharging her except for cause. Thus, after accepting the offer of employment, plaintiff was subject to termination at the will of her employer. Shebar, supra, 111 N.J. at 285, 544 A.2d 377 ("Historically, under common law, employers have been able to terminate the employment of at-will employees for cause or for no cause at all, in the absence of an employment contract providing otherwise"); Bernard v. IMI Systems, Inc., supra.

C.
Plaintiff nevertheless insists that she was entitled to the protections of the employment manual because even at-will employees were entitled to notification of a deficiency in the employee's work and the reasonable opportunity to remedy any problem.[2] *164 However, the motion judge found that the employment manual did not apply to plaintiff since she "never received a manual because she never began her employment with the defendant," and because the manual adequately provided that employment with defendant was "at-will." We agree with the judge's conclusion.
In Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 297-98, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985), our Supreme Court held that terms of an employee manual (including those relating to discharge only for cause) are enforceable if the manual is circulated to the employees and includes benefits which "are incident of the employment (including, especially, job security provisions)." An employee can provide consideration for the employer's "unilateral contract" by continuing to work for the employer while "intending that continuation to be the action in exchange for the employer's promise." Woolley, supra, 99 N.J. at 302, 491 A.2d 1257. The Court noted it would presume that employees relied on the promises in the employment manual *165 because they continued to work for the company. Id. at 304, 491 A.2d 1257.
Woolley is not applicable. Plaintiff never received the manual nor worked for defendant as an employee. Therefore, she cannot benefit from the terms of the manual.

II.
Plaintiff also argues that the trial court erred in not analyzing her promissory estoppel claim. She asserts that she detrimentally relied on defendants' offer of employment by giving up her desktop publishing business in Boston and moving to New Jersey. Defendants contend the doctrine does not apply and that plaintiff bargained only for employment which was terminable at will.
Promissory estoppel requires that plaintiff prove that (1) there was "a clear and definite promise"; (2) the promise was "made with the expectation that the promisee will rely on it" (3) "the promisee must reasonably rely on the promise," and (4) "the promisee must incur a detriment in reliance thereon." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 401 n. 9, 622 A.2d 1353 (Ch.Div. 1993), aff'd, 273 N.J. Super. 542, 642 A.2d 1037 (App.Div. 1994). Accord, The Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463, 479, 395 A.2d 222 (App.Div. 1978), certif. denied, 79 N.J. 488, 401 A.2d 243 (1979). There are cases in other jurisdictions addressing whether a prospective employee can sue under promissory estoppel because he or she moved or left another job in reliance of an offer of employment which the employer later rescinded. See Annotation, Employer's State-Law Liability for Withdrawing, or Substantially Altering, Job Offer for Indefinite Period Before Employee Actually Commences Employment, 1 A.L.R.5th 401 (1992). As the annotation points out "[c]ourts have generally found that the mere detriment furnished by an employee in leaving one position and taking another does not constitute sufficient consideration" to create a "contract of permanent employment or one terminable only for cause." Id. at 408. "As a result of the rule that a contract of employment for an *166 indefinite period is terminable at will," ibid., reliance on a promise of at-will employment frequently gives rise to no cause of action. See e.g., Sakelaris v. Rice/Maddox Partnership, 883 F. Supp. 64, 66 (D.S.C. 1995) (under South Carolina law, "[r]eliance on a promise consisting solely of at-will employment is unreasonable as a matter of law"); Heinritz v. Lawrence Univ., 194 Wis.2d 606, 535 N.W.2d 81, 83-84 (1995) (promissory estoppel does not apply when a party is offered employment in an at-will position); Sartin v. Mazur, 237 Va. 82, 375 S.E.2d 741, 742 (1989) (promissory estoppel does not apply to an employer's offer of employment for an indefinite period when prospective employee quits his current job in reliance on the offer); Cunnison v. Richardson Greenshields Sec., Inc., 107 A.D.2d 50, 485 N.Y.S.2d 272, 275 (1985) ("a change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine"); Milligan v. The Union Corp., 87 Mich. App. 179, 274 N.W.2d 10, 12 (Ct.App. 1978) ("absent distinguishing features or additional consideration, we see no reason to recognize a cause of action if the terminable at will employee is never given an opportunity to commence employment").
In other states promissory estoppel can be applied when the employer rescinds an offer of employment after the prospective employee did something in reliance thereon. See Bower v. AT & T Technologies, Inc., 852 F.2d 361, 363 (8th Cir.1988) (under Missouri law, prospective employee's reasonable detrimental reliance on an employer's promise of employment which was later rescinded is actionable even though the employment contract is not enforceable; recovery permitted for "damages based on ... reasonable detrimental reliance on [the] promise of future employment"). Filcek v. Norris-Schmid, Inc., 156 Mich. App. 80, 401 N.W.2d 318, 319 (Ct.App. 1986) ("plaintiff had a cause of action since the employee gave up his employment relying on the defendant's promise of employment"); Ravelo v. County of Hawaii, 66 Haw. 194, 658 P.2d 883, 887-88 (1983) (police officer and spouse who quit their jobs in one county, moved and changed their children's school, in reliance of offer of employment which was *167 later rescinded, alleged a cause of action under promissory estoppel). In Grouse v. Group Health Plan, Inc., 306 N.W.2d 114 (Minn. 1981), a pharmacist quit his job and declined another after accepting a position with defendant, which was later rescinded. The Supreme Court of Minnesota held that plaintiff had a cause of action based on promissory estoppel because plaintiff "had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of respondent once he was on the job" and "resigned the position he already held in reliance on the firm offer which respondent tendered him." 306 N.W.2d at 116. According to the court, "[s]ince ... the prospective employment might have been terminated at any time, the measure of damages is not so much what he would have earned from respondent as what he lost in quitting the job he held and in declining at least one other offer of employment elsewhere." Ibid.
There is merit to the view that it "would be absurd to require an employer ... to actually employ the applicant for one hour or one day so that the [at-will] employee could then be discharged," Sartin, supra, 375 S.E.2d at 743, but what the cases applying the promissory estoppel doctrine recognize is that there may be losses incident to reliance upon the job offer itself, even though the employer can terminate the relationship at any time. Here plaintiff alleges that she gave up her business and clients in Boston and sustained losses in moving to New Jersey in reliance on the offer she had accepted.
We believe that plaintiff should be permitted to proceed to trial on her promissory estoppel claim. It is to be noted that she further alleges that, for approximately ten days between June 15 and June 25, 1993, defendants did not act fairly in communicating their decision to rescind the job offer while they wanted her to complete work as an independent contractor. She contends that during that period she continued to advise clients in Boston of her decision to close her business there and prepared to move to New Jersey in the absence of being told of defendants' decision. In these circumstances permitting plaintiff to prove such damages is *168 consistent with our traditional notion of "good faith and fair dealing," even though the contract was itself terminable at will. See Bower v. AT & T Technologies, Inc., supra; Grouse v. Group Health Plan, Inc., supra (damages recoverable for losses based on reasonable detrimental reliance). As we made clear in Nolan v. Control Data Corp. 243 N.J. Super. 420, 429-30, 579 A.2d 1252 (App.Div. 1990), the doctrine of "good faith and fair dealing" applies where there is some type of employment contract, even if it is merely "at will." As Judge King stated:
While true that in New Jersey an employer can discharge an "at will" employee at any time and for any reason, this principle is a consequence of the fact that the length of an "at will" employee's engagement is not controlled by contract. In the absence of a contract, there is no implied covenant of good faith and fair dealing. Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 433, 570 A.2d 12 (App.Div. 1990). This does not mean that an implied obligation of good faith is inapplicable to those aspects of the employer-employee relationship which are governed by some contractual terms, regardless [of] whether that relationship is characterized generally as being "at will." As to such aspects, there can be no doubt that they are subject to the implied covenants of good faith and fair dealing extant in all contracts.
[Nolan, supra, 243 N.J. Super. at 429, 579 A.2d 1252 (footnote and citations omitted).]
We conclude that reliance on the at-will employment contract relationship gives rise to a cause of action for damages flowing from plaintiff's losses based on her reasonable reliance on full-time employment with defendant and her losses based upon defendant's lack of good faith and fair dealing attributable to any delay in expressing the decision to terminate the relationship. Thus, plaintiff is entitled to proceed on a theory of promissory estoppel by virtue of her detrimental reliance on the promise of employment.
If the fact finder determines that post-acceptance conduct by plaintiff justified defendant's decision to withdraw its offer or rescind the agreement, plaintiff would be entitled to damages only if it finds that plaintiff was injured by defendant's delay in communicating that decision to her.
We find no need to comment on plaintiff's further claims. R. 2:11-3(e)(1).
*169 We reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] Defendant shall refer to Imedia, Inc., unless otherwise indicated.
[2] The manual provides:

Disciplinary Actions
Unacceptable behavior which does not lead to immediate dismissal may be dealt with in the following manner:
Verbal Warning
First Written Warning
Dismissal
Written warnings will include the reasons for the manager's dissatisfaction and any supporting evidence. You will have an opportunity to defend your actions and rebut the opinion of your manager at the time the warning is issued. Disciplinary actions may also include suspensions or other measures deemed appropriate to the circumstances.
All pertinent facts will be carefully reviewed, and the employee will be given a full opportunity to explain his or her conduct before any decision is reached.
Dismissal
Employment and compensation with IMEDIA is "at will" in that they can be terminated with or without cause, and with or without notice, at any time, at the option of either IMEDIA or yourself, except as otherwise provided by law.
If your performance is unsatisfactory due to lack of ability, failure to abide by IMEDIA rules or failure to fulfill the requirements of your job, you will be notified of the problem. If satisfactory change does not occur, you may be dismissed. Some incidents may result in immediate dismissal.