701 A.2d 742

ROBERT BONCZEK, PLAINTIFF–APPELLANT, v. CARTER–WALLACE, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1997—Decided October 22, 1997.

---

Before Judges LANDAU, NEWMAN and COLLESTER.

*Thomas A. Thompson (Collier, Shannon, Rill & Scott)* of the Washington, D.C. bar, admitted pro hac vice, argued the cause for appellant (*Lowenstein, Sandler, Kohn, Fisher & Boylan,* and *Mr.*

*Thompson,* attorneys; *Gregory B. Reilly,* of counsel; *William J. Rodgers* and *Mr. Thompson,* of counsel and on the brief; *Amy C. Grossman,* on the brief).

*Eric M. Nelson* of the New York bar, admitted pro hac vice, argued the cause for respondent *(Whitman, Breed, Abbott & Morgan,* attorneys; *Mr. Nelson, Kevin F. Kostyn* and *Sally G. Blinken,* of counsel; *Andrew Muscato,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff Richard Bonczek appeals from the grant of summary judgment dismissing his complaint against defendant Carter–Wallace, Inc. which asserted breach of an employment contract and sought application of a promissory estoppel claim against Carter–Wallace. Bonczek's appeal also challenges the denial of his request to amend the complaint to join a new party, Ralph Levine, and to add a count for intentional interference with contract. We affirm.

Bonczek is an attorney who had been employed since 1969 in in-house counsel roles of increasing responsibility by E.I. DuPont De Nemours & Co. (DuPont), located in Delaware. In 1993, following contacts initiated by an executive search firm retained by Carter–Wallace, Bonczek met with its Vice–President for Corporate Development to discuss employment as "Corporate Vice–President, Compliance and Regulatory" to be performed at the Carter–Wallace facility in Cranbury, New Jersey.

Several months of discussions culminated in a September 28, 1993 letter sent from Carter–Wallace's New York headquarters by its Vice–President of Human Resources offering Bonczek the job, to commence about thirty (30) days from his resignation from DuPont. It contained, in part, the following language:

14. Per our standard procedure, this letter is not intended nor should it be considered as an employment contract for a definite or indefinite period of time. Once employed, you will be an employee at will. Additionally, this offer is

contingent on the completion of reference checks. In this regard, we would require that the references would be generally positive in content and character.

Bonczek signed and returned the letter on October 4, 1993, resigning from DuPont on the same day. None of the parties' meetings took place in New Jersey. None of the correspondence was sent from or received in New Jersey.

Carter–Wallace's reference checks continued, as indicated in paragraph 14, and on October 12, 1993 the parties met to discuss questions that had been raised as to the accuracy of Bonczek's representations respecting his job title and salary level at DuPont. After Bonczek forwarded additional information, Carter–Wallace withdrew its offer, explaining in an October 18, 1993 letter that the additional submission did "not substantiate the [DuPont] salary you claimed." Additionally, it was noted that Bonczek's title at DuPont was not, as first indicated, "Senior Corporate Counsel," but "Corporate Counsel". The letter concluded that:

In view of these discrepancies and the lack of credibility they imply, we have decided to withdraw our offer of employment to you. As you know, the offer was contingent on satisfactory reference checks, which, of course, includes verification of all material information on which we relied for the purpose of making the offer of employment.

In early 1994, Bonczek filed his complaint against Carter–Wallace in New Jersey. Contending that there was no factual dispute respecting the legal arguments it asserted as defenses, Carter–Wallace moved, shortly before trial in 1996, for summary judgment. The motion was granted by order dated August 27, 1996. In that order, the motion judge also denied Bonczek's eleventh hour cross-motion to amend the complaint. Bonczek urges on appeal that Carter–Wallace breached an employment contract which he had accepted; that under a choice of laws analysis, failure to apply New Jersey principles of contract law and promissory estoppel constituted plain error; that the trial judge misapplied and misinterpreted our decision in *Peck v. Imedia, Inc.*, 293 *N.J.Super.* 151, 679 *A.2d* 745 (App.Div.1996); that genuine issues of material fact should have precluded grant of summary judgment as to the breach of contract and promissory

estoppel claims; and that it was an abuse of discretion to deny his motion to amend the complaint.

■ It is clear from the proposed date of employment in the September 28, 1993 letter, and from the provisions of paragraph 14, that Bonczek's employment never commenced. We note the language, "*[o]nce employed, you will be an employee at will*" and "this offer is *contingent on the completion* of reference checks ... generally positive in content and character." (Emphasis supplied).

■ Bonczek was not employed by Carter–Wallace because of the paragraph 14 conditions, and Carter–Wallace's reasonable conclusion that Bonczek's embellishment of his DuPont title and salary raised questions of credibility and character. A contract that generated employment which commenced would be subject, in this State, to the duty of good faith and fair dealing implicit in all contracts, even if the employment was at will. *Peck v. Imedia, Inc., supra,* 293 *N.J.Super.* at 168, 679 *A.*2d 745 (App.Div.), *certif. denied,* 147 *N.J.* 262, 686 *A.*2d 763 (1996); *Nolan v. Control Data Corp.,* 243 *N.J.Super.* 420, 429, 579 *A.*2d 1252 (App.Div.1990).

■ New Jersey law differs in some respects from that of New York. In *Imedia,* we held that even when a job is terminable at will, a promissory estoppel claim can arise from revocation of a job offer, depending upon the facts. *Imedia, supra,* 293 *N.J.Super.* at 167, 679 *A.*2d 745. The estoppel may arise where there is denial of a good faith opportunity to perform after a prospective employee has resigned from an existing position in reliance upon a firm job offer. This does not appear to be the law in New York. *Mayer v. Publishers Clearing House,* 205 *A.D.*2d 506, 613 *N.Y.S.*2d 190 (1994); *Dalton v. Union Bank of Switz.,* 134 *A.D.*2d 174, 520 *N.Y.S.*2d 764 (1987). Thus, a possible conflict does exist, justifying the motion judge's reference to conflict of laws principles and his choice of New York law.

■ While place of performance is a highly significant factor for determining applicable law when a conflict of laws appears in a contract dispute, the significance of that factor is materially

diminished when performance has not yet begun in the forum state. Here, the issues in dispute concern the existence and/or effect of an agreement negotiated and contracted entirely outside of the forum state. Also in dispute is the question of a promissory estoppel claim allegedly arising from promises, made outside this State to a person in another state, that assertedly produced detrimental consequences in that other state to a resident of that state who had never begun to work in New Jersey. Here, New Jersey had not yet acquired any significant interest or relationship to the transaction as required under New Jersey conflict of laws. *See Glynwed, Inc. v. Plastimatic, Inc.,* 869 *F.Supp.* 265, 270 (D.N.J.1994). Moreover, the lack of New Jersey contacts in the instant case can be contrasted with the circumstances in cases which have held that New Jersey law applied because of a significant relationship or interest. *See Gantes v. Kason Corp.,* 145 *N.J.* 478, 679 *A.*2d 106 (1996) (possibly defective machine manufactured in N.J.); *McCabe v. Great Pacific Century Corp.,* 222 *N.J.Super.* 397, 537 *A.*2d 303 (App.Div.1988) (contract to be fully performed in New Jersey pursuant to New Jersey regulations, and work had commenced). The choice of New York substantive law was appropriate on the facts peculiar to this case. Application of New York law precludes the promissory estoppel argument put forth by Bonczek. *See Mayer, supra,* 613 *N.Y.S.*2d at 190; *Dalton, supra,* 520 *N.Y.S.*2d at 766.

■ However, while New Jersey and New York law may differ on the promissory estoppel issue, we agree with the motion judge that there would be no difference in *result,* even were New Jersey law applied. The motion judge correctly perceived that the record does not support the existence of the necessary promissory estoppel element of "clear and definite promise." *See Great Falls Bank v. Pardo,* 263 *N.J.Super.* 388, 401 n. 9, 622 *A.*2d 1353, (Ch.Div. 1993), *aff'd,* 273 *N.J.Super.* 542, 642 *A.*2d 1037 (App.Div.1994).

The employment offer was unambiguously contingent upon character verification, a factor surely evident to Bonczek as an experienced corporate attorney. We further agree that the varia-

tions in salary and job title representations were reasonably regarded by Carter–Wallace as sufficiently material to avail itself of the paragraph 14 condition. Indeed, even had Bonczek's employment actually commenced, a discharge would easily have survived challenge under the good faith and fair dealing test. Good cause would not have been required under the at-will contract, had Bonczek's employment commenced.

■■■■■ Bonczek's further contention, also founded in promissory estoppel under New Jersey law, that he received oral assurance that he would receive a "generous severance payment" if his employment with Carter–Wallace did not work out, was properly resolved under New York law for the same reasons enunciated above with respect to the contract claim arguments.

> The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.
>
> [*Dalton, supra,* 520 *N.Y.S.*2d at 766.]

Moreover, in New York, as in New Jersey, in order for a claimant to establish promissory estoppel, one of the necessary elements is existence of a clear and unambiguous promise. *Pancza v. Remco Baby, Inc.,* 761 *F.Supp.* 1164, 1172 (D.N.J.1991) (applying New York law). The word "generous" is anything but clear and unambiguous. The severance benefit contention is also barred under the parol evidence rule. Assuming existence of an employment contract, in order to receive evidence to supplement or vary its terms under New York law,

> [A]t least three conditions must exist: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing … [I]t must not be so clearly connected with the principal transaction as to be part and parcel of it.
>
> [*Mitchill v. Lath,* 247 *N.Y.* 377, 160 *N.E.* 646, 647 (1928).]

*See also Crossland Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co.,* 935 *F.Supp.* 184, 194 (E.D.N.Y.1996); *Namad v. Salomon, Inc.,* 147 *A.D.*2d 385, 537 *N.Y.S.*2d 807, 809, *aff'd,* 74 *N.Y.*2d 751, 545 *N.Y.S.*2d 79, 543 *N.E.*2d 722 (1989).

Absent the need to resolve an evident ambiguity in a written agreement (not here present), the New Jersey parol evidence rule would be no different on these facts, nor would the facts surrounding the severance issue survive our "clear and definite promise" requirement for establishment of promissory estoppel.

█ Finally, we find no abuse of discretion in denial of the motion to amend. We note that although such motions are ordinarily afforded liberal treatment, the factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation. *See Du–Wel Prods., Inc. v. U.S. Fire Ins. Co.,* 236 *N.J.Super.* 349, 364, 565 *A.*2d 1113 (App.Div.1989), *certif. denied,* 121 *N.J.* 617, 583 *A.*2d 316 (1990). Here we note that the individual (Levine) sought to be joined is apparently not amenable to personal service in New Jersey; his existence and corporate function has been known since the litigation commenced; and his deposition had been taken two years earlier. Further, it appears that under New York law, a claim of tortious interference with economic advantage would likely be dismissed as an effort to avoid the employment-at-will rule. *See Ingle v. Glamore Motor Sales, Inc.,* 73 *N.Y.*2d 183, 538 *N.Y.S.*2d 771, 535 *N.E.*2d 1311, 1313 (1989). We would adhere to the same view.

Affirmed.