**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1633-17T4

NATIVIDAD MOREL,

     Plaintiff-Appellant,

v.

JOSE MOREL,

     Defendant-Respondent.

_____

Submitted December 18, 2018 – Decided January 10, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0909-15.

Peter L. Festa, LLC, attorneys for appellant (Alfred V. Gellene, on the brief).

Jonathan J. Mincis, attorney for respondent.

PER CURIAM

     Plaintiff Natividad Morel appeals from two Family Part orders, dated June 3, 2016 and October 10, 2017. The first order denied her motion to file an

amended complaint to include Diomedes Morel (Diomedes),[1] defendant Jose Morel's nephew, as a party and to add a second count for declaratory relief. The second order granted defendant's motion in limine. Finality was achieved when the court entered an October 26, 2017 Final Judgment of Divorce (FJD), which dissolved the marriage and incorporated by reference the parties' settlement agreement.[2] The settlement agreement reserved plaintiff's right to appeal the June 3, 2016 and October 10, 2017 orders. Because we conclude the trial court did not abuse its discretion in denying plaintiff's motion to amend and granting defendant's motion in limine, we affirm.

I.

On January 14, 2015, plaintiff filed a one-count complaint for divorce and sought equitable distribution of marital property. After defendant failed to file an answer, the court scheduled a default hearing. On May 20, 2015, plaintiff submitted a notice of application for equitable distribution and a proposed final judgment. Although her Case Information Statement (CIS) failed to identify any "[b]usinesses, [p]artnerships, [or] [p]rofessional [p]ractices" subject to

[1] We refer to Diomedes by his first name to avoid confusion with the parties.

[2] The terms of the settlement agreement were set forth orally at a hearing that day. The court entered an amended FJD after plaintiff filed her notice of appeal.

equitable distribution, in the alimony section of the proposed final judgment, plaintiff claimed "[defendant] owns [a] business, the income is unknown," and in the equitable distribution section, plaintiff described the real property owned by the parties, located at 315 21st Ave, Paterson, as having:

> [two] grocery stores.[3] One store is owned and operated [by] husband and nephew. A [second] store is rented out. The value of the business is unknown. The income and rental income is unknown. This property is in [h]usband's name and acquired during marriage.

Defendant ultimately retained counsel and plaintiff consented to vacate the default. The parties engaged in discovery and the court scheduled trial for May 15, 2016. On March 29, 2016, less than two months before trial and after the close of discovery, plaintiff filed a motion to amend her complaint to include Diomedes as a co-defendant. She also sought to add a second count declaring defendant the equitable and legal owner of two grocery stores, or bodegas, that were then-owned by Diomedes in order to subject the bodegas to equitable distribution. Defendant filed a letter brief in opposition on April 18, 2016.

In support of her motion to amend, plaintiff certified that defendant purchased the 315 21st Avenue bodega in 1997. She stated that in 2005, a "big

---

[3] The second grocery store was actually located at 306 21st Avenue, not 315 21st Avenue.

A-1633-17T4

problem" developed at the store when defendant was advised that due to undefined "irregularities," his license to operate a food-stamp debit-card machine was being revoked, which would have been a "disaster" because in "Paterson you cannot [operate] a successful grocery store unless you are allowed to accept food stamps."

Plaintiff alleged that in order to continue accepting food stamps, in 2005 defendant "transferred" the store to his cousin, Victor Garcia, who was able to obtain the necessary authorization to enable the bodega to continue receiving food stamps. The sale price for the business was $60,000, according to the parties' 2007 joint federal income tax return, which also provided that the sale occurred on July 23, 2007, and that defendant originally acquired the bodega on July 23, 1999.[4] Despite the sale to Garcia, plaintiff claimed defendant continued to take "all the profits," do all the "hiring and firing," and make "all the rules."

Plaintiff, who was still working at the 315 21st Avenue bodega, maintained that in 2007, defendant learned that a grocery store across the street at 306 21st Avenue was for sale. Plaintiff asserted that in order to eliminate

---

[4] The 2007 joint return contradicts plaintiff's certified statement that defendant acquired the 315 21st Avenue bodega in 1997 and sold it in 2005.

competition, defendant decided to purchase the business, but because he was still ineligible to accept food stamps, he named Diomedes as the owner.

To consummate the transaction, on May 23, 2007, Diomedes signed a note, which defendant personally guaranteed, promising to pay the then-owner of the bodega, Manuel Sanchez, $55,000. Diomedes testified at his deposition that an additional $5,000 deposit was paid in connection with the sale. He also testified that he hired defendant as manager of the 306 21st Avenue bodega from May 2007 until March 2015. According to plaintiff, defendant controlled the day-to-day operations of this bodega, as he did with the 315 21st Avenue business. On March 22, 2011, Garcia sold the 315 21st Avenue bodega to Diomedes.

On August 20, 2015, in preparation for a mediation conference, defendant's attorney sent plaintiff's counsel a letter stating defendant had no ownership "interest in any business since 2007." The letter also enclosed the parties' joint tax returns for 2012 and 2013, and maintained that "nowhere in these joint income tax returns is there any business schedule."

When he was deposed in February 2016, Diomedes admitted to having a phone conversation with Miriam Gonzalez, one of plaintiff's relatives, on September 19, 2015, concerning the ownership of the bodegas. Specifically,

 A-1633-17T4

Diomedes testified that he recalled Gonzalez telling him, "You have to be conscious that the businesses are theirs, not yours." Diomedes then testified that he responded to Gonzalez, "Yes, I don't have a problem." Plaintiff certified that in a later communication she had with Diomedes regarding the ownership of the bodegas, Diomedes stated the issue "is in the hands of the attorneys."

On June 3, 2016, following oral arguments, the court denied plaintiff's application. In its oral decision, the court considered the undisputed fact that plaintiff knew about the businesses and the potential claim against Diomedes at the time the complaint was filed. The court noted it was "doubtful" that Diomedes would "voluntarily surrender" the businesses, and observed that the new claim "would require a significant amount of discovery," including expert testimony and other proofs to value the bodegas, none of which was available to the parties and presented to the court at the time of the motion. The court concluded that because plaintiff knew of the alleged improper transactions prior to filing the complaint, it would be improper and prejudicial to defendant and Diomedes to permit the amendment after the close of discovery and on the eve of trial. Plaintiff filed a motion for leave to appeal the June 3, 2016 order. We denied her motion on July 19, 2016.

A-1633-17T4

A new trial date was scheduled for September 11, 2017, but because Diomedes failed to appear as a witness, trial was again rescheduled. Plaintiff's counsel requested entry of an order compelling Diomedes to appear at the ensuing trial or be held in contempt. Defendant opposed the request and filed a motion in limine seeking to bar Diomedes' testimony and suppress and exclude all evidence of the bodegas' ownership.

Following an October 6, 2017 in limine hearing, a second motion judge, relying on the law of the case doctrine, issued an oral decision granting defendant's motion. The court entered an order on October 10, 2017, which precluded plaintiff "from introducing any testimony or alleged claim as to an interest in the two . . . businesses formerly owned by . . . [d]efendant, Jose Morel." This appeal followed.

## II.

Plaintiff argues that the trial court erred in denying her motion to amend because she "presented adequate grounds for . . . amendment," it would be an "injustice to her if the claim regarding Diomedes . . . was not included in this action," and "[t]here will be no undue prejudice to defendant." We disagree.

We review the court's grant or denial of a motion to amend under an abuse of discretion standard. Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div.

1994).  An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

After a responsive pleading is served, a plaintiff may amend his or her complaint "only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice."  R. 4:9-1; see also R. 5:4-2(e).  "[T]he factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation."  Bonczek v. Carter Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997).  In the context of joining a new party, "the court should consider whether the granting of the motion will unduly delay or prejudice the rights of the original parties," Salitan v. Magnus, 28 N.J. 20, 26 (1958), as well as the potential for undue prejudice to the proposed party.  See also Du–Wel Prods., Inc. v. U.S. Fire Ins. Co., 236 N.J. Super. 349, 364 (App. Div. 1989) (explaining denial of leave to amend is appropriate when the movant seeks to join new parties "late in the litigation and at a point at which the rights of other parties to a modicum of expedition will be prejudicially effected").  Ultimately, "the

achievement of substantial justice is the fundamental consideration." Jersey City v. Hague, 18 N.J. 584, 602 (1955).

Applying these principles here, we conclude the court did not abuse its discretion in denying plaintiff's belated motion to amend. Plaintiff filed the motion less than two months before trial and after the close of discovery. The court correctly observed that contrary to her claim that Diomedes' purported admission at his deposition was both the impetus and basis for her amendment, plaintiff was aware of Diomedes' role as the alleged strawman for the purchases well before March 29, 2016. Indeed, she certified that "[a]ll during these periods, it was well known knowledge between myself and [defendant] that he was the owner of the stores."

Plaintiff also failed to provide the court with an expert report or the identity of an expert to value the businesses. It is well settled that "[e]xpert testimony is required when 'a subject is so esoteric that jurors of common judgment and experience cannot form a valid conclusion,'" Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 450 (1993), such as the market value of real property. Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001). Further, the valuation of a business is a similarly "difficult valuation task," so

parties generally must "secure the assistance of appropriate experts to appraise business interests." Id. at 435-36.

While the court acknowledged that in certain circumstances a party could establish a business's value without expert testimony, no evidence of the businesses' fair market value, investment value or liquidation value was provided to the court, in the form of business records or market analyses. Rather, the only evidence plaintiff identified that suggested the value of either bodega was the sales prices in the transactions that she maintained were fraudulent and made merely to hide true ownership.

Against this factual background, the court also properly considered the undue prejudice that would visit defendant and Diomedes by permitting the belated amendment. The case would have continued, delaying finality and causing both defendant and Diomedes to incur additional costs and expenses, including the need to retain experts, repeat depositions and conduct additional discovery. Finally, we reject plaintiff's claim that the adjournment of trial proceedings subsequent to her motion rendered any delay that would have resulted from the amendment non-prejudicial as motions for leave to amend must be decided "in light of the factual situation existing at the time each motion is made." Fisher, 270 N.J. Super. at 467.

A-1633-17T4

III.

We similarly conclude the court did not commit error in granting defendant's motion in limine.  As a threshold matter, although plaintiff's notice of appeal and statement of facts indicate she appeals from the October 10, 2017 order, her brief contains no legal analysis of the court's decision related to that order.  Failing to brief an argument on appeal operates as a waiver.  539 Absecon Blvd., LLC v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009); R. 2:6–2(a).  We nevertheless briefly address the substantive bases for the court's decision because we conclude the court did not abuse its discretion in granting the motion.

We review a trial court's evidentiary rulings on a motion in limine for an abuse of discretion.  Molino v. B.F. Goodrich Co., 261 N.J. Super. 85, 103 (App. Div. 1992).  "The law of the case doctrine," which "generally prohibits a second judge, in the absence of additional developments or proofs, from differing with an earlier ruling," Piech v. Layendecker, 456 N.J. Super. 367, 380 (App. Div. 2018), "is itself discretionary" and "should be applied flexibly to serve the interests of justice," State v. Reldan, 100 N.J. 187, 205 (1985).

At the time of the October 6, 2017 hearing on defendant's motion in limine, the court noted that plaintiff still did not have an expert, valuations, an

A-1633-17T4

appraisal, or other pertinent discovery as to the value of the bodegas. Further, although we denied plaintiff's motion for leave to appeal the June 3, 2016 order, at no point during the fifteen months between our July 19, 2016 order and the October 6, 2017 proceeding did plaintiff seek reconsideration of the June 3, 2016 order, request to reopen discovery or file a motion to serve an expert report out of time. Accordingly, relying in part on the law of the case doctrine, the court determined it would be prejudicial to defendant "on the eve of trial" and with respect to "one of the oldest cases on [the] court's docket" to permit plaintiff "to present evidence, and testimony with regard to issues that have already been precluded as a result of the denial of the motion to amend." Because the court's factual findings are supported by substantial credible evidence in the record, its decision to grant defendant's motion was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1633-17T4