■ WILLIAM NAMAD, Respondent, v SALOMON INC. et al., Appellants.—Order, Supreme Court, New York County (Ethel B. Danzig, J.), entered April 27, 1988, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, the motion granted and the complaint dismissed, with costs.

This action arises out of a written employment contract between plaintiff William Namad and defendant Philipp Brothers, Inc. (Philipp Brothers [a division of defendant Salomon Inc.]), which employed plaintiff on an at-will basis from

1966 to 1983. In early 1983, plaintiff negotiated an employment contract with Mr. David Tendler, then the cochairman and chief executive officer of defendants. The agreement was reflected in two documents: first, a written memorandum of understanding, which set forth the terms of employment that the parties had agreed upon; and second, a formal employment contract, dated February 3, 1983, which superseded the memorandum of understanding and recited that it "set forth our agreement". These documents were each signed by both plaintiff and Mr. Tendler.

The employment contract provided for the employment term (four years commencing Jan. 1, 1983 and ending Dec. 31, 1986); plaintiff's minimum salary ($225,000 per year); an undertaking that defendant's management would recommend annual bonus awards of 6,000 shares defendants' stock, to be issued pursuant to the company's stock bonus plan, which set forth terms whereby rights to unvested shares were canceled upon an employee's termination; and liquidated damages in the event of plaintiff's termination of his employment prior to the expiration of the contract term. The contract explicitly reserved committing defendants to any other compensation to plaintiff for the years covered by the agreement, by providing that the determination of "other compensation and entitlements, if any, including regular bonuses, special bonuses and stock awards shall be at the discretion of the management and subject to the approval of the Board of Directors". The contract also stated that "[s]uch bonuses as are awarded will be consistent with the customary policy of the company." This contract ultimately provided plaintiff, over its four-year term, with $3,022,550 in compensation.

After the contract expired and was not renewed, plaintiff commenced the within action seeking $2,254,633.33 in additional compensation allegedly due under the contract. Specifically, plaintiff claimed that the written contract required payment of a yearly bonus in accordance with the "customary policy" of Philipp Brothers, which, plaintiff alleged, the company failed to adhere to in his case. He also asserted that the company failed to honor its "severance policy" by which, he claimed, a "key employee" was provided, upon his departure, with one month's "total per annum compensation for every year that he was employed" and, in addition, "the cash value of the unvested shares of stock as of the date of termination."

Defendants moved for summary judgment dismissing the complaint on the ground that the written contract did not entitle plaintiff to any additional compensation. Plaintiff op-

posed defendants' motion in a personal affidavit, asserting, *inter alia,* that the written employment contract did not constitute the complete agreement between the parties, and thus, resort to parol evidence was necessary.

Upon a review of the record, we find that the IAS Justice erred in denying defendants' motion for summary judgment.

It is well established that "[w]here a contract is reduced to writing it is presumed to embody the final and entire agreement of the parties." *(Clark v American Morgan Co.,* 268 App Div 209, 212, *lv denied* 293 NY 933; *see also,* 4 Williston, Contracts § 631, at 951-952 [3d ed 1961] [a writing that is the product of negotiations which the parties anticipated would result in a written memorialization is presumed to incorporate all previous agreements, and to be an integrated contract].)

Here, plaintiff negotiated an understanding that was initially memorialized, with the intention that it ultimately be expressed in a "formal contract". The employment contract that followed opened with the words, "[w]e wish to set forth our agreement for your continued employment by the Philipp Brothers organization." While the clause may contain no talismanic lawyers' phrases, it nevertheless clearly and sufficiently, in our view, reveals that the parties intended the document to contain all—not part—of their agreement.

Hence, before evidence of an extrinsic oral agreement is received to vary the terms of a written contract, "at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing * * *. [I]t must not be so clearly connected with the principal transaction as to be part and parcel of it." *(Mitchill v Lath,* 247 NY 377, 381.)

Plaintiff has utterly failed to meet these requirements. Although he has alleged a collateral agreement, that alleged agreement, in purportedly binding Philipp Brothers to a set standard of awarding plaintiff cash bonuses, severance pay and stock vesting, contradicts the explicit terms of both the written employment contract and the stock plan. Indeed, the written employment contract explicitly reserves to management complete discretion as to the awarding of any compensation guaranteed in the employment contract itself. The stock plan clearly sets forth terms whereby rights to unvested shares are canceled upon an employee's termination. Thus, in the absence of fraud, evidence purporting to establish such

additional obligations is clearly incompetent. *(See,* 4 Williston, Contracts § 631, at 948-949 [3d ed 1961].)

In any event, the suggestion that such terms, which according to plaintiff would almost *double* the value of the employment agreement to him, would not be reduced to writing is simply incredible. This is particularly so in light of the fact that the written employment agreement sued upon here was drafted in unique circumstances—the first and only occasion in almost 20 years that these two very sophisticated parties memorialized, after detailed negotiations, the terms of their employment relationship.

Plaintiff's entire complaint is grounded upon policies which he alleges existed, and under the terms of which he seeks compensation. Neither plaintiff's complaint nor his affidavit in opposition to defendants' summary judgment motion, however, offered any evidentiary facts to support his allegations. As such, he has failed to plead the existence of these policies in a manner sufficient to entitle them to judicial cognizance, let alone to defeat the terms of a contrary written agreement. *(See, Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 264; *Rosenberg v Del-Mar Div.,* 56 AD2d 576.) Even if he had, however, the policies under which he makes his claim are ones pertaining to employees at will, from which he excluded himself by contract. *(Cf., Schacht v City of New York,* 39 NY2d 28.)

Accordingly, plaintiff's complaint should be dismissed. Concur—Sullivan, Carro and Milonas, JJ.

Kupferman, J. P., and Smith, J., dissent in part in a memorandum by Kupferman, J. P., as follows: There are five causes of action. The first four have to do with the alleged bonuses and the fifth has to do with the severance policy. I concur only with respect to dismissing the fifth cause of action.

As to the first four, the contract is specific in that "[s]uch bonuses as are awarded will be consistent with the customary policy of the company."

There is a difference of opinion as to what the customary policy has been.

As the IAS court stated, with this dispute, its resolution "must await a trial of this action." The defendants, having accepted such language, must adhere to it. *(See, Weiner v McGraw-Hill, Inc.,* 57 NY2d 458.)