■ LAND-SITE CONTRACTING CORP., Appellant, v MARINE MIDLAND BANK, N.A., Respondent.—Order, Supreme Court, New York County (Carol H. Arber, J.), entered December 17, 1990, which granted defendant's motion to dismiss the complaint, unanimously reversed, on the law, without costs, the motion is denied, and the complaint reinstated.

On January 19, 1989, the plaintiff Land-Site Contracting Corp., entered into a silent joint venture agreement with Becom Real, Inc. whereby Becom was to bid for, and Land-Site was to perform and supervise, a construction project at JFK International Airport. The agreement provided that all monies contributed by the parties or received as payments under the construction contract were to be treated as trust funds, and that any interest in such funds would not be transferred except with the written consent of both parties.

On January 21, 1989, John Coleman, Becom's Vice President, sent a copy of the agreement to Dean Ryan, a Vice President of the defendant Marine Midland Bank, N.A. (Marine), advising that Adriano Lott, Land-Site's President, would be sending Marine information about Land-Site, and that Becom and Land-Site had agreed to open an account at Marine in connection with the project. On January 23, 1989, Adriano Lott faxed to Marine, Land-Site's incorporation certificate, financial statement, credit references and a schedule of work on the project.

On February 2, 1989, an account denominated "Becom Real, Inc. JFK Special Account" was opened at Marine. Byron and John Coleman (as President and Vice President/Treasurer respectively) and Adriano and Manuel Lott (as Project Managers) executed a Corporate Banking Resolution which provided, as here pertinent, that "either the President or V.P./Treas. and the Project Manager" were authorized to draw orders for the payment of money from the account. In April 1990, Land-Site learned that $1,029,000 had been withdrawn from the special account without the consent of either Adriano or Manuel Lott, either of whom was a required signatory on any withdrawal from the account. In May 1990, Land-Site commenced an action against Marine sounding in negligence, breach of contract and unauthorized diversion of trust funds, seeking to recover the monies withdrawn from the special account without proper authorization as provided in the Corporate Banking Resolution. (See, Annotation, *Bank's liability*

*for payment or withdrawal on less than required number of signatures,* 7 ALR4th 655.)

Marine moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (3) and (7), and the IAS Court granted the motion on the ground that since Land-Site had not signed the Corporate Banking Resolution in its own name, it had not established a contractual relationship with Marine, and so had no standing to sue. The IAS Court further held that Land-Site had not stated a cause of action for diversion of trust funds under Lien Law § 72.

Lien Law § 70 (1) provides as here pertinent that funds "received by a contractor under or in connection with a contract for an improvement of real property * * * or a contract for a public improvement in this state * * * shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter." Section 71 (4) provides that "[p]ersons having claims for payment of amounts for which the trustee is authorized to use trust assets as provided in this section are beneficiaries of the trust". It is thus clear that monies received from the Port Authority for the performance of the JFK project and deposited into the account for that purpose constituted trust funds under the Lien Law. "The Legislature sought to assure that the funds received from an owner should 'reach [their] ultimate destination—material and labor'. (See 1942 Report of N. Y. Law Rev. Comm., pp. 298-300; N. Y. Legis. Doc., 1942, No. 65[H], pp. 28-30.)" *(Aquilino v United States,* 10 NY2d 271, 279.)

There is no disputing that Land-Site, which was responsible for directing and performing the work on the JFK project, had claims for payment out of the funds that Becom received from the Port Authority. Land-Site was accordingly a beneficiary of the statutory trust created pursuant to article 3-A of the New York Lien Law (§§ 70—79-a). Moreover, Marine had actual knowledge that the monies held in the account were specifically denominated trust funds by the parties in their January 19, 1989 agreement, which Marine received from Becom less than two weeks before the account was opened.

*In re Gould* (65 Bankr 87 [ND NY]), relied upon by the IAS Court, does not stand for the proposition that a joint venturer cannot be a beneficiary under article 3-A of the Lien law. That case held that an owner of real property (in this case the Port Authority), is not a beneficiary of the trust because the statute was designed to protect parties who performed the construction work (in this case Land-Site).

With respect to the "standing" issue, a contractual relationship may be established by the conduct of the parties, as well as by express agreement *(Matter of Ahern v South Buffalo Ry. Co.,* 303 NY 545, 561, *affd* 344 US 367). A determination as to standing "takes into account all the material circumstances surrounding the opening of the account, the acknowledged intent of the parties to the transaction, the bank's knowledge of that intent, and the nature of the bank's transactions with the parties." *(Schoenfelder v Arizona Bank,* 165 Ariz 79, 84, 796 P2d 881, 886.)

In our view the conduct of the parties and the surrounding circumstances in this case are sufficient to establish a contractual relationship between Land-Site and Marine, particularly as we are dealing with a CPLR 3211 motion, wherein we accept the allegations in the complaint as true, and we "resolve all inferences which reasonably flow therefrom in favor of the pleader." *(Sanders v Winship,* 57 NY2d 391, 394.) Concur—Carro, J. P., Milonas, Ellerin, Wallach and Ross, JJ.