Howard Backer, Appellant, v Robert Lewit et al., Respondents.

First Department, May 12, 1992

APPEARANCES OF COUNSEL

*G. Oliver Koppell* of counsel *(Koppell & Drachler,* attorneys), for appellant.

*Andrew A. Kimler* of counsel *(Seidman, Maiman, Morenstein & Kimler,* attorneys), for Robert Lewit and another, respondents.

*Morton A. Luchs* for Alan Bachman, respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

On October 12, 1988, the parties to this contract dispute entered into a written employment agreement by which defendant, Trendstar Inc., a manufacturer of men's clothing, hired plaintiff on a commission basis—on all net sales made directly by him—as a salesman of men's apparel for a six-month period. The commission was not to become due or owing until

payment by Trendstar's customers. The agreement further provided: "Nothing contained herein shall be construed or be deemed to obligate either party to extend the term of this Agreement or to enter into a new agreement for the services of [plaintiff] after the expiration of such term. Any such extension of term or the entering into of a new agreement shall be by another express written, duly executed agreement by the same parties."

It is undisputed that upon expiration of the six-month period, plaintiff continued his employment with Trendstar until he was terminated on August 11, 1989. Shortly thereafter, he commenced this action against Trendstar and the two individual defendants, Lewit and Bachman, who are alleged to be its officers, owners and principals. In the first cause of action, plaintiff asserted a breach of contract claim for a 1% commission on Trendstar's $1.8 million gross sales for the period of time he was employed and through 1989. Plaintiff claims that this 1% commission was agreed upon pursuant to an oral agreement and in consideration of his assemblage of a national sales force. Plaintiff further claims that after the expiration of the six-month contract period, the parties entered into a new oral agreement embodying the same terms as the original agreement, that is, a 7% commission on sales made directly by plaintiff and an additional 1% commission on Trendstar's gross sales.

In the second cause of action, a fraud claim, plaintiff alleges that he was induced to leave his prior employment based upon representations by the defendants that if he was able to develop a national sales force for Trendstar his employment would be extended and he would thereby earn not only a salary but substantial commissions as well. Plaintiff alleges that the assurances made during the first six months of employment were false, that the defendants knew they were false, that he relied upon those assurances to continue his work as a sales manager of Trendstar, and that he encouraged independent salespersons to sell Trendstar goods. By early 1989, however, plaintiff claims, the financing to pay for the production of goods ordered for the fall 1989 season had not been obtained and the goods were not, in fact, being produced. Plaintiff alleges that the defendants had intended all along to deceive him and utilize his efforts solely to liquidate Trendstar's inventory. Under both causes of action, plaintiff sought a 1% commission on Trendstar's gross sales together with $2,000,000 in punitive damages.

When plaintiff moved to compel the defendants to serve answers to his interrogatories and to produce previously demanded documents, the defendants, in two separate motions, cross-moved for, *inter alia,* summary judgment dismissal of the complaint. The IAS court denied plaintiff's motion to compel discovery and granted the cross motions, dismissing the complaint. Plaintiff appeals. We modify to the extent of reinstating the second cause of action insofar as it seeks compensatory damages.

It is well established that "[w]here a contract is reduced to writing it is presumed to embody the final and entire agreement of the parties." *(Clark v American Morgan Co.,* 268 App Div 209, 212, *lv denied* 293 NY 933; *see, Namad v Salomon Inc.,* 147 AD2d 385, 387.) This presumption serves the vital function of providing stability to a written contract, " 'for otherwise either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing.' " (4 Williston, Contracts § 631, at 963 [3d ed].) Thus, where the parties agree that the terms set forth in a writing are intended to embrace their entire agreement, evidence of a prior or contemporaneous oral agreement is inadmissible to contradict or vary the terms of such written agreement. (Uniform Commercial Code § 2-202.)

In *Mitchill v Lath* (247 NY 377, 381), the Court of Appeals articulated the now well-settled principle that before extrinsic evidence of an oral agreement is received to vary the terms of a written contract, "at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that [the] parties would not ordinarily be expected to embody in the writing * * * [I]t must not be so clearly connected with the principal transaction as to be part and parcel of it." *(See also, Namad v Salomon Inc., supra,* 147 AD2d 385, 387.)[1] Plaintiff fails to meet these requirements since, at the very least, in light of the fact that the term "7% * * * commission on net sales"

---

1. While we recognize that two entirely separate contracts, each based on independent consideration, may be made at the same time and be entirely distinct legally *(see,* 4 Williston, Contracts § 637 [3d ed]), that argument is not made here. Nor would it be applicable since the alleged oral agreement is closely related to the subject dealt with in the written agreement, and thus the transactions are necessarily and inextricably bound together.

was expressly stated in the parties' written agreement, the 1% commission on gross sales would be expected to be similarly embodied in the writing.

Plaintiff argues that upon the termination of the six-month contract period the parties entered into a new oral agreement embodying the 1% commission on gross sales provision. Thus, plaintiff claims, the oral promise of a 1% commission was, in and of itself, a separate agreement, which, supported by new and independent consideration, namely, his assembling a national sales force, need not be in writing. While the parol evidence rule has no application to a subsequent agreement or subsequent oral modification of a written contract *(Haight v Cohen,* 123 App Div 707; *see also, Local 50, Bakery, Confectionery & Tobacco Workers Union v American Bakeries Co.,* 73 AD2d 862) which is supported by new consideration *(Haight v Cohen, supra,* at 708),[2] the record is devoid of any showing that the oral promise upon which plaintiff relies was a subsequent agreement. Rather, as this record discloses, plaintiff places the oral agreement with respect to a promise of a 1% commission on all sales as having been entered into contemporaneously with the written agreement. In his bill of particulars, for instance, plaintiff does not assert a claim of separate consideration but rather alleges that in exchange for his biweekly salary and 1% commission, he would, *inter alia,* assemble a national sales force. Thus, on the basis of plaintiff's own claim, as limited by his pleadings and contrary to his present argument made for the first time on appeal, the oral agreement was entered into contemporaneously with the written agreement. Its admission is therefore barred by the parol evidence rule. *(See, Quality Packaging Supply Corp. v Carlson Co.,* 158 AD2d 936.)

Moreover, the claim is plainly contradicted by the written agreement, which expressly provides that "[a]ny such extension of term or the entering into of a new agreement shall be by another express written, duly executed agreement by the same parties." "A written agreement or other written instrument * * * contain[ing] a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change

---

2. In New York, a subsequent modification of a written agreement need *not be supported by new consideration if it is in writing signed by the party* against whom it is sought to be enforced. (General Obligations Law § 5-1103; Uniform Commercial Code § 2-209 [1].)

is sought or by his agent." (General Obligations Law § 15-301 [1].) "[I]t is not necessary that the agreement affirmatively proscribe oral amendment in order for section 15-301 (1) to be applicable. It is necessary only that the writing have such an effect." *(Ganisin v Noeth,* 163 AD2d 828, 828-829.) While the parties did, de facto, continue their agreement beyond the six-month term, this continued relationship implicitly embodied the terms of the original agreement, which, as noted, did not contain a provision for the payment of a 1% commission on gross sales.

■ Plaintiff's second cause of action for fraud, however, stands on a different footing and should be reinstated. Contrary to the IAS court's view, the claim of misrepresentation does not relate to the nonperformance of an alleged contract and thus does not run afoul of the proscription against allowing a contract claim to masquerade as a tort action. *(Cf., Miller v Volk & Huxley,* 44 AD2d 810.) Since plaintiff's fraud claim does not seek to enforce any promise made to plaintiff, only to compensate him for damages flowing from his reliance upon the false representations which he alleges, it is truly a tort claim. *(See, Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 408.) Moreover, plaintiff has complied with the requirements of CPLR 3016 by stating in sufficient detail the circumstances constituting the alleged fraud *(see, Kings Antiques Corp. v Tucker,* 88 AD2d 820), the essential constituents of which are, (1) representation of a material existing fact, (2) falsity, (3) scienter, (4) deception and (5) injury *(Channel Master Corp. v Aluminium Ltd. Sales, supra,* at 407). In essence, the fraud claim alleges that plaintiff was induced to leave his prior employment and to continue his marketing efforts in reliance upon the representations that Trendstar was an ongoing business, that the individual defendants would produce a fall 1989 line, when, in fact, defendants at all times only wanted plaintiff to liquidate the inventory existing in October 1988, all of which, plaintiff claims, led to a loss of reputation in the industry due to his inability to fulfill sales orders. If such claim is established, the individual defendants may be held liable for damages caused by their false representations. *(Bailey v Diamond Intl. Corp.,* 47 AD2d 363, 367.) This is not a case for punitive damages, however, and any claim therefor is stricken. *(See, Walker v Sheldon,* 10 NY2d 401; *see also, Mom's Bagels v Sig Greenebaum, Inc.,* 164 AD2d 820, 822-823, *appeal dismissed* 77 NY2d 902.)

Accordingly, the order of the Supreme Court, New York

County (Carol E. Huff, J.), entered March 26, 1991, which, *inter alia,* granted the defendants' cross motions for summary judgment dismissing the complaint, should be modified, on the law, to the extent of reinstating the second cause of action insofar as it seeks compensatory damages, with leave to plaintiff to compel discovery on the reinstated portion of the complaint and, except as thus modified, affirmed, without costs or disbursements.

MILONAS, ELLERIN and KUPFERMAN, JJ., concur.

Order of the Supreme Court, New York County, entered March 26, 1991, which, *inter alia,* granted the defendants' cross motions for summary judgment dismissing the complaint, is modified, on the law, to the extent of reinstating the second cause of action insofar as it seeks compensatory damages, with leave to plaintiff to compel discovery on the reinstated portion of the complaint and, except as thus modified, affirmed, without costs or disbursements.