■ Williams Real Estate Co., Inc., Respondent, v Ann Taylor, Inc., Appellant. [674 NYS2d 674] —Order, Supreme Court, New York County (Charles Ramos, J.), entered September 19, 1997, denying defendant's motion for summary judgment and granting plaintiff's cross-motion for summary judgment, unanimously reversed, on the law, without costs, the cross-motion denied, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Plaintiff, a real estate broker, entered an exclusive brokerage agreement with defendant on February 28, 1992, for a nine-month term, in connection with defendant's flagship store on East 57th Street. The agreement provided that if the lease for that location could not be renegotiated, plaintiff would look for a new location, would look to that other location's lessor for compensation and would remit to defendant a portion of the $200,000 consulting fee paid upon execution of the exclusive brokerage agreement. The agreement made no provision for protecting plaintiff as to properties brought to defendant during the term of the agreement but not successfully negotiated until after termination of the brokerage agreement.

Plaintiff undertook negotiations on defendant's behalf, and also introduced other locations to defendant, for which leases were not concluded. In July 1992, defendant received unsolicited confidential information from another broker, Edward S. Gordon, about a location at 645 Madison Avenue that was not on the market and was still occupied by another tenant. Defendant informed Gordon that it had an exclusive brokerage agreement with plaintiff and that defendant would not negotiate for the proposed location, which as of yet was unavailable, unless Gordon and plaintiff co-brokered the transaction. Plaintiff, which was not informed of the location of this property, and Gordon verbally agreed to negotiate a co-brokerage agreement between themselves. During those negotiations, plaintiff informed defendant that the property at 645 Madison Avenue might become available, but defendant informed plaintiff that this was the very property that was the subject of the proposed co-brokerage agreement, and that it would not submit an offer unless the co-brokerage agreement was signed.

By letter dated October 12, 1992, defendant canceled the exclusive brokerage agreement, effective November 13, 1992, as per the terms of that agreement. No negotiations for the 645 Madison Avenue location had yet occurred. On October 14, 1992, plaintiff and Gordon signed the co-brokerage agreement, providing for the division of the commission, if any, earned

from the landlord of 645 Madison Avenue if defendant entered a lease at that location. Defendant was not a party to this agreement.

Also on October 14, 1992, plaintiff responded to defendant's notice of cancellation by providing a list of properties, including 645 Madison Avenue, that it claimed were under active negotiation, and for which it expected to be protected in the event that the transaction actually occurred after termination of the exclusive brokerage agreement. Defendant responded, reminding plaintiff that the main goal was to secure the 57th Street location, and that it was still interested in some of the other properties, but that 645 Madison Avenue was still not on the market and was being kept confidential. On October 30, 1992, still within the term of the brokerage agreement, defendant informed Gordon that it was interested in 645 Madison Avenue, but no communications occurred afterward with regard to that location. No negotiations ensued, and the co-brokerage agreement lapsed by its terms in June 1993.

By late 1993, defendant was pursuing other sources to acquire an alternative location, since the lease at East 57th Street was due to expire. In January 1994, Equitable Real Estate, which owned 645 Madison Avenue, informed defendant's new manager that space would be available for leasing at that location. In March 1994, defendant's new manager started negotiating a lease directly with Equitable, which was effective January 1995. Subsequently, plaintiff commenced this action to recover a brokerage commission for 645 Madison Avenue.

Plaintiff has no basis upon which to seek a commission. The exclusive brokerage agreement made no provision for post-termination protection, so that plaintiff can claim no rights directly under the agreement (*see, Cushman & Wakefield v 214 E. 49th St. Corp.*, 218 AD2d 464, 466-467, *appeal dismissed* 88 NY2d 951). Even that agreement, though, provided that plaintiff would seek a commission only from the landlord of a property other than the East 57th Street location.

Plaintiff seeks to introduce parol evidence to establish its rights after termination of the agreement. Plaintiff construes this evidence as bearing on a superseding verbal agreement extending some of the protections of the exclusive brokerage agreement. However, before evidence of an extrinsic oral agreement is received to modify the terms of a written contract, the oral agreement must be collateral to the written agreement, must not contradict the written agreement and must be one that the parties would not ordinarily be expected to embody in

the written agreement. It must not be so clearly connected with the principal transaction as to be part of it (*see, Namad v Salomon Inc.*, 147 AD2d 385, *affd* 74 NY2d 751). Under these circumstances, the letters and explanations thereof upon which plaintiff relies are inadmissible. Even if they were to be considered, though, that evidence is unavailing on plaintiff's claim, that plaintiff had rights regarding locations introduced to defendant during the term of the written agreement but only subsequently transacted.

Moreover, Gordon, not plaintiff, initially sought to introduce that location to defendant, and there is no record evidence that any negotiations occurred during either brokerage agreement's term. Any interest in the property lapsed until a year and a half after expiration of the exclusive brokerage agreement, when the first substantive negotiations occurred, so that there is no evidence that plaintiff was the procuring cause of the lease (*Greene v Hellman*, 51 NY2d 197) or brought the parties together on mutually agreeable terms (*Bashant v Spinella*, 67 AD2d 1100), regardless of whether plaintiff had made unsuccessful overtures regarding the subject property during the term of the agreement (*Cushman & Wakefield v 214 E. 49th St. Corp.*, *supra*). Nor is there any evidence that defendant acted in any manner to deprive plaintiff of a rightful commission (*supra*, at 466-467). Concur—Williams, J. P., Tom, Mazzarelli and Andrias, JJ.