OPINION OF THE COURT
Bernard J. Fried, J.
*927 Defendant Bernstein Litowitz Berger & Grossmann LLP moves, pursuant to CPLR 3211 (a) (7), to dismiss the complaint in its entirety, on the ground that the complaint fails to state a cause of action.
Plaintiff was employed as an associate at Bernstein Litowitz Berger & Grossmann (BLBG) from May 1998 through May 2002. Defendant is a class action law firm, specializing in, inter alia, consumer and securities class action lawsuits. Plaintiff alleges that although the starting salary at BLBG was substantially less than salaries at other similarly sized law firms, she took the position because she was informed at the time of her hiring that the firm encouraged associates to bring in business, and that she would be eligible for bonuses for successful cases that she brought into the firm. Plaintiff states that “[t]he possibility of receiving bonuses for business development as a young associate was very intriguing and greatly influenced my decision to accept BLBG’s offer of employment” (Guggenheimer affidavit 114). It is not disputed that plaintiffs employment was at will.
Plaintiff alleges that, after joining the firm, she was repeatedly told about the firm’s bonus policy. At weekly firm lunches, Max Berger, a BLBG partner, encouraged associates to develop the firm’s business as a means to earn additional income (Guggenheimer affidavit 1i 6). Plaintiff alleges that while she understood that the amount of the bonus was discretionary, at no time did Berger ever state that an associate’s entitlement to the bonus was discretionary if certain criteria were met. Plaintiff contends that she understood, as did her associate colleagues, that if they brought a case to the firm and if the case were to be accepted by the firm, the associate would be paid additional income in accordance with the following three factors: (a) the ultimate outcome of the case; (b) the role the associate played in bringing in the case; and (c) the work the associate contributed to the success of the case (id.). BLBG associates were eligible for a bonus of up to 10% of the total amount of fees received by BLBG in these matters (complaint 11 6).
Plaintiff alleges that, in 1999, she was responsible for attracting a number of Internet privacy cases to the firm because of novel legal theories she had originated in a seminal case in this area of the law. She alleges that she was also responsible for bringing several large and lucrative automobile lending discrimination cases to BLBG. Plaintiff alleges that she was responsible for BLBG obtaining a cocounseling agreement with *928 two other law firms for existing cases against Nissan Motor Acceptance Corp. (NMAC) and General Motors Acceptance Corp. (GMAC), as well as for all future automobile financing discrimination cases brought under the Equal Credit Opportunity Act. Plaintiff states that, as a result of her efforts, three other cases were brought to BLBG, to wit: Ford Motor Credit, Chrysler Financial and Toyota Motor Credit (Guggenheimer affidavit lili 18, 19). Plaintiff alleges that she was also responsible for bringing a case against Credit Union National Association (CUNA), a large credit disability insurer, into the law firm. She also alleges that, as a result of her efforts with CUNA, BLBG was entitled to receive a substantial fee under a settlement agreement.
Plaintiff alleges that she approached Berger in or about July 2000 to discuss her bonus for these cases and was told by him to prepare a memorandum detailing her business development efforts, her role in procuring the cases, and a description of the work that she had performed on them. In her memorandum of July 24, 2000, plaintiff stated:
“While I realize, based on our past discussions, that it is impossible to know what my ‘referral fee,’ up to the full 10%, for these cases would be (assuming they are successful) until the conclusion of the litigation, the purpose of this memorandum is to reach agreement as to my role in bringing in these cases now, so that there is no dispute later” (Guggenheimer affidavit, exhibit D).
Plaintiff did not receive a formal response to this memorandum. After receipt of the memorandum, however, plaintiff alleges that she was orally reassured by Berger that “everything was fine” and that she “shouldn’t worry” about receiving a bonus (Guggenheimer affidavit 1Í 25). Plaintiff alleges that she also spoke frequently to another partner, Darnely Stewart, about her entitlement to a bonus.
In February 2001, after receipt of plaintiffs memorandum, Berger circulated an e-mail entitled “Special Bonuses for Businesses Referrals.” In it he stated that although an associate could still receive a bonus of up to 10% of the firm’s fee on a case, this amount would be capped at $250,000 for each matter. He also stated that “[t]he entitlement to a special bonus and the actual percentage of the firm’s fee to be awarded in any particular situation are in the absolute and sole discretion of the Management Committee” (Guggenheimer affidavit, exhibit E). *929 Plaintiff wrote to Berger and asked whether the $250,000 cap applied to any of the cases that she had already brought to the firm. He replied to her in an e-mail that “the cap does not apply to any case referred prior to the institution of the new policy.” Berger added, “[Y]ou know, however, that the amount of any special referral bonuses to associates has always been in the complete discretion of the partnership” (id.).
In May 2002, after her first child was born, plaintiff left the BLBG law firm. Several months after she left, she learned that the NMAC case had settled with BLBG receiving approximately $900,000 in legal fees. Plaintiff spoke with Stewart on numerous occasions about her bonus, but was told that the firm could not pay a bonus at that time because the settlement had yet to be approved. In December 2003, Stewart informed plaintiff that legal fees had been distributed, and that plaintiff should speak with Berger about receiving her bonus.
Plaintiff wrote to Berger in December 2003 about her bonus. She was told that Berger was away for the holidays and could not respond until after January 20, 2004. By February, plaintiff had not received a response. Plaintiff e-mailed Berger again on or about February 17, 2004 (Guggenheimer affidavit 1Í 31). Berger responded that he was going away and would not be able to address this issue until March 2004. Plaintiff alleges, on information and belief, that sometime in early 2004, the GMAC case settled and that BLBG received approximately $1.35 million in legal fees. Plaintiff again e-mailed Berger on March 17, 2004 to discuss the subject of her bonus. Berger responded that he was too busy to address the issue, and that the firm’s management committee had referred the matter to Stewart and Dan Berger, another BLBG partner. On March 19, 2004, plaintiff spoke with Stewart, who informed her that the management committee had considered plaintiffs involvement in and contribution to the GMAC and NMAC cases and had determined that it did not meet the requirements of the firm’s policy to qualify for a bonus (Guggenheimer affidavit 11 35). Plaintiff was offered $50,000, i.e., $25,000 for each of the NMAC and the GMAC cases. Plaintiff claims that she is entitled to a bonus for the other automobile cases, as well as the Internet privacy cases and the CUNA case.*
*930 Plaintiff commenced this action seeking recovery on the grounds of breach of contract, misrepresentation, promissory estoppel, unjust enrichment and quantum meruit. Defendant moves for dismissal, pursuant to CPLR 3211 (a) (7), on the ground that the complaint fails to state a cause of action. Defendant argues that since an employee has no enforceable right to a discretionary bonus, an employer cannot be in breach of contract concerning a discretionary bonus policy. Defendant argues that even if it had made prior, contradictory oral statements concerning its bonus policy, they are of no import, since an employer is entitled to change its policy for an at-will employee, such as plaintiff. Defendant further argues that plaintiffs continued employment for more than a year after the written policy pronouncement upon which she relies is deemed consent to such policy. Defendant contends that not only does plaintiff have no breach of contract claim, she has neither a quasi contact nor a promissory estoppel claim, since the entitlement and the amount of any additional compensation is entirely discretionary. Defendant argues that plaintiffs misrepresentation claim must fail because none of the alleged oral misrepresentations call into question the discretionary nature of the bonus policy, the eligibility for which was to be determined in the sole discretion of BLBG’s management committee.
In the context of a CPLR 3211 (a) (7) motion, directed at the sufficiency of the pleadings, the pleadings are to be afforded a liberal construction, and the court must accept the allegations as true, according the plaintiff the benefit of every reasonable inference to determine whether they come within the ambit of any cognizable legal theory (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976]; Hirschhorn v Hirschhorn, 194 AD2d 768 [2d Dept 1993]). A CPLR 3211 motion should be granted only when, even viewing the allegations as true, the plaintiff still cannot establish a cause of action. The standard is not whether the plaintiff has stated a cause of action, but whether the plaintiff has a cause of action (McGuire v Sterling Doubleday Enters., L.P., 19 AD3d 660 [2d Dept 2005]). “The motion must be denied if from the pleadings’ four corners, Tactual allegations are discerned which taken together manifest any cause of action cognizable at law’ ” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]).
Although, as a general rule, an employee has no enforceable right to compensation under a discretionary compensation or *931 bonus plan (Namad v Salomon Inc., 147 AD2d 385 [1st Dept 1989], affd 74 NY2d 751 [1989]), in Weiner v Diebold Group (173 AD2d 166, 167 [1st Dept 1991]), the Appellate Division, First Department, recognized New York State’s “long standing policy against the forfeiture of earned wages.” Whether unpaid “incentive compensation” under a defendant’s bonus plan constitutes a discretionary “bonus” or “earned wages” not subject to forfeiture is an issue of fact (see Kaplan v Capital Co. of Am., 298 AD2d 110, 111 [1st Dept 2002], citing Mirchel v RMJ Sec. Corp., 205 AD2d 388, 389 [1st Dept 1994]). Thus, employees in this state may enforce an agreement to pay an annual bonus made at the onset of the employment relationship, where such bonus constitutes “an integral part of plaintiffs compensation package” (Mirchel v RMJ Sec. Corp., 205 AD2d at 389, quoting Harden v Warner Amex Cable Communications, 642 F Supp 1080, 1096 [SD NY 1986]). In the instant case, there is an issue of fact as to whether the representations made to plaintiff compel a conclusion that the bonus was vested and mandatory, as opposed to discretionary and forfeitable (see Peck v Heidrick & Struggles, 177 AD2d 431 [1st Dept 1991]).
Defendant’s assertion that the law firm’s policy made payment of a bonus totally discretionary contradicts plaintiff’s conflicting contention that the company entered into an explicit oral employment agreement, reaffirmed by the statements of two of its partners that plaintiff was assured of receiving a bonus as part of her compensation. Thus, although the bonus plan, as conceived by the firm, may have been discretionary, there is a question of fact as to whether there was an oral contract agreeing to exercise that discretion in plaintiffs favor, sufficient to defeat defendant’s CPLR 3211 (a) (7) motion (see Martin H. Bauman Assoc. v H & M Intl. Transp., 171 AD2d 479 [1st Dept 1991]). Notably, defendant fails to submit an affidavit refuting plaintiffs contention that there was a course of conduct over a two-year period promising a bonus if certain criteria were met. An implied contractual relationship may be established by conduct of the parties, as well as by express agreement (Land-Site Contr. Corp. v Marine Midland Bank, 177 AD2d 413, 415 [1st Dept 1991]). The course of dealing between the parties, as alleged by plaintiff, evinces an implied promise that plaintiff would receive a bonus as part of her compensation if she brought cases to the law firm that proved to be successful (Giuntoli v Garvin Guybutler Corp., 726 F Supp 494 [SD NY 1989]; Shapira v United Med. Serv., 15 NY2d 200, 210 [1965] *932 [“existence of an implied contract is a question of fact”]). Implicit in every contract is a covenant of good faith and fair dealing (Dalton v Educational Testing Serv., 87 NY2d 384 [1995]; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62 [1978]). The covenant of good faith and fair dealing requires that the contracting parties will not take any action which will have the effect of destroying the rights of the other party to receive the benefit of the contract (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002], supra).
Nor can a bonus be withheld because, as here, the employee did not work until the date the bonus was to have been paid (Watson v Prentice-Hall, 50 AD2d 1077 [4th Dept 1975]). When a bonus that is an integral part of a compensation package has already been earned by the time the employer decides not to pay it, the latter can no longer argue that such bonus is discretionary. At that point, failure to pay it constitutes a breach of the employment agreement (see Harden v Warner Amex Cable Communications, 642 F Supp at 1096). Although the memorandum indicated that both the entitlement to the bonus and the amount of the bonus were discretionary, the memorandum must be read in the plaintiffs context of plaintiffs allegations that she had been repeatedly reassured that such discretion had already been exercised in her favor and that she had no cause for concern. The facts, as alleged, permit the reasonable inference that plaintiff only sought clarification on the $250,000 cap, because she was secure in her belief that she was to receive the bonus. “[A]n implied contractual relationship may be established by conduct of the parties, as well as by express agreement. The course of dealing between the parties evinces an implied promise that . . . bonus payments constitute a part of plaintiffs compensation” (Mirchel v RMJ Sec. Corp., 205 AD2d at 390 [citations omitted]; Berardi v Fundamental Brokers, Inc., 1990 WL 129174, 1990 US Dist LEXIS 11388 [SD NY, Aug. 30, 1990]).
The fact that the precise amount of the bonus to be awarded was not specified does not make the contract unenforceable. Employment contracts that contain open additional compensation clauses are nonetheless binding contracts (see Knapp v McFarland, 344 F Supp 601 [SD NY 1971]). That the amount of the bonus could not be determined until the case settled does not bar recovery under an implied contract (Giuntoli v Garvin Guybutler Corp., 726 F Supp 494, 508 [1989]). A determination of whether there exist sufficiently definite guidelines to enable *933 a court to supply a bonus figure is a factual issue and survives a motion to dismiss (see Zucker v Katz, 708 F Supp 525, 532 [SD NY1989]). I find that the conduct of the parties, and the surrounding circumstances as alleged, are sufficient to establish a sustainable cause of action for breach of an oral contract for payment, particularly in the context of a CPLR 3211 motion, wherein the court accepts, as it must, the allegations in the complaint as true and “resolve [s] all inferences which reasonably flow therefrom in favor of the pleader” (Sanders v Winship, 57 NY2d 391, 394 [1982]).
Plaintiffs second cause of action is designated as a cause of action for misrepresentation. The elements of fraudulent misrepresentation are that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of his or her reliance (Swersky v Dreyer & Traub, 219 AD2d 321, 326 [1st Dept 1996]). I find that the second cause of action states a claim of misrepresentation with sufficient particularity required by CPLR 3016 (b). The language of CPLR 3016 (b) merely requires that a claim of misrepresentation be pleaded in sufficient detail to give adequate notice (see Foley v D’Agostino, 21 AD2d 60, 64 [1st Dept 1964]). Indeed, the Court of Appeals has specifically noted that this rule “is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be ‘impossible to state in detail the circumstances constituting a fraud’ ” (Lanzi v Brooks, 43 NY2d 778, 780 [1977] [citation omitted]). In the instant case, the complaint contains some rational basis for inferring that the alleged misrepresentations were knowingly made (Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92 [1st Dept 2003]). On a motion to dismiss for failure to state a cause of action, “a plaintiff . . . need only plead that he relied on misrepresentations made by the defendant. . . since the reasonableness of his reliance [generally] implicates factual issues whose resolution would be inappropriate at this early stage” (Internet Law Lib., Inc. v Southridge Capital Mgt., LLC, 223 F Supp 2d 474, 485 [SD NY 2002], cited in Knight Sec. v Fiduciary Trust Co., 5 AD3d 172, 173 [1st Dept 2004]; Oxford Health Plans [NY] v BetterCare Health Care Pain Mgt. & Rehab, 305 AD2d 223 [1st Dept 2003]).
To establish a viable cause of action sounding in promissory estoppel, the third cause of action, a plaintiff must allege (1) an oral promise that is sufficiently clear and unambiguous, (2) rea *934 sonable reliance on the promise by a party, and (3) an injury caused by the reliance (see Knight Sec. v Fiduciary Trust Co., 5 AD3d 172 [2004], supra). Accepting the facts alleged in the compláint as true, and giving the plaintiff the benefit of all inferences (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409 [2001], supra), I find that plaintiff established a viable cause of action based upon promissory estoppel arising out of plaintiff’s reliance on defendant’s clear and unambiguous promise that plaintiff would be rewarded with a bonus if she expended certain efforts that resulted in fees earned by the firm.
Plaintiff’s fourth cause of action sounds in unjust enrichment. “To state a cause of action for unjust enrichment, a plaintiff must allege that [she] conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor” (Nakamura v Fujii, 253 AD2d 387, 390 [1st Dept 1998]). “The essence of unjust enrichment is that one party has received money or a benefit at the expense of another” (City of Syracuse v R.A.C. Holding, 258 AD2d 905, 906 [4th Dept 1999]), and that it “is against equity and good conscience to permit [the other party] to retain what is sought to be recovered” (Citibank, N.A. v Walker, 12 AD3d 480, 481 [2d Dept 2004], quoting Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972]). Having induced plaintiff to bring business into the firm, BLBG refused to pay her the bonus they promised to pay. Based upon these allegations, I find that the complaint pleads adequate factual allegations to support relief under the equitable theory of unjust enrichment.
Plaintiffs fifth cause of action is for quantum meruit.
“Quantum meruit recovery 1 “rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another” (Trott v Dean Witter & Co., 438 F Supp 842, 844, affd 578 F2d 1370)’ ... In order to make out a claim in quantum meruit, a plaintiff must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services” (Moors v Hall, 143 AD2d 336, 337-338 [2d Dept 1988]).
As a general rule, the performance and acceptance of services gives rise to the inference of an implied contract to pay for the *935 reasonable value of such services (see Matter of Adams, 1 AD2d 259, 262 [4th Dept 1956], affd 2 NY2d 796 [1957]). This inference, however, may not be drawn, “where because of the relationship between the parties, it is natural that such service should be rendered without expectation of pay ... In such situations, the claimant, in order to prevail, must present evidence to indicate that he or she expected to be paid for the services” (Moors v Hall, supra at 338 [internal quotation marks omitted]). “The question of whether a party had a reasonable expectation of compensation for services rendered is a matter for the trier of fact to determine based on the evidence before it” (Moors v Hall, supra, cited in Matter of Alu, 302 AD2d 520, 520 [2d Dept 2003]). Here, plaintiff has produced such evidence in the form of her uncontradicted sworn affidavit, detailing a four-year course of conduct by defendant which persuaded her to perform certain services for defendant in return for compensation in the form of a bonus. I conclude that plaintiffs cause of action for quantum meruit is sufficiently stated as to survive defendant’s CPLR 3211 challenge.
Accordingly, it is hereby ordered that defendant’s motion to dismiss is denied.

 At a November 14, 2005 conference, defendant stated that the $50,000 was a settlement offer and in no way related to any of the matters discussed (transcript at 7).