**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3404-22

WELLS FARGO BANK, NA, AS
TRUSTEE FOR PARK PLACE
SECURITIES, INC., ASSET-BACKED
PASS-THROUGH CERTIFICATES
SERIES 2004-WHQ2,

      Plaintiff-Respondent,

v.

RALPH SCHIANO and
ELEANOR SCHIANO,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION,

      Third-Party Defendant,

and

PHH MORTGAGE CORPORATION,
SUBSIDIARY OF OCWEN FINANCIAL
CORPORATION, AND SUCCESSOR
TO OCWEN LOAN SERVICING, LLC,

Third-Party Defendant-
Respondent.

_____

Argued March 5, 2025 – Decided July 21, 2025

Before Judges Marczyk, Paganelli, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery and Law Divisions, Passaic County, Docket Nos. C-000079-19 and L-1884-22.

Michael Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Brian Pantaleo argued the cause for respondents (Greenberg Traurig, LLP, attorneys; Brian Pantaleo, on the brief).

PER CURIAM

Plaintiff Wells Fargo Bank, NA, as Trustee for Park Place Securities, Inc., Asset-Backed Pass-Through Certificates Series 2004-WHQ2 (the trust), filed a complaint against defendants Ralph and Eleanor Schiano[1] to reinstate defendants' mortgage, which plaintiff owned and claimed had been inadvertently discharged. In response, defendants argued plaintiff never validly owned the

_____

[1] Because defendants share the same last name, we refer to them by their first names to avoid confusion. We intend no disrespect in doing so.

mortgage, and counterclaimed seeking to quiet title and asserting claims for mortgage fraud, slander of title, and intentional infliction of emotional distress.

The Chancery Division initially reinstated the mortgage and later determined that plaintiff was the legal owner of the loan and dismissed defendants' quiet title claim. The matter was then transferred to the Law Division, which granted plaintiff's motion for summary judgment, dismissed defendants' counterclaims, and awarded plaintiff attorney's fees.

Defendants appeal from the Chancery Division orders reinstating plaintiff's mortgage nunc pro tunc and dismissing their quiet title action. They also appeal the Chancery Division's order denying their motion for reconsideration. They further challenge the Law Division's order granting plaintiff's summary judgment motion dismissing their counterclaims. Next, they contest the Law Division's decision to deny both their motion to file an amended pleading and motion for reconsideration as to the dismissal of their counterclaims. Finally, defendants challenge the Law Division's award of contractual attorney's fees. Following our review of the record and the applicable legal principles, we affirm.

I.

Defendants purchased a home in Wayne in 1987, securing the property

A-3404-22

with a note and mortgage. In October 2004, they refinanced the mortgage, executing a note in the amount of $353,000 in favor of Argent Mortgage Company, LLC (Argent). Argent secured the note with a mortgage. Section 9 of the mortgage agreement entitled the lender to attorney's fees in the event of litigation to protect the lender's interest in the property. Argent later assigned the loan to Ameriquest Mortgage Company (Ameriquest), and thereafter, Ameriquest assigned the loan to plaintiff in late 2004. Plaintiff's loan servicer subsequently mistakenly discharged the mortgage, and the Passaic County Clerk recorded the discharge in June 2019.

In July 2019, plaintiff filed a complaint against defendants seeking reinstatement nunc pro tunc of defendants' mortgage, alleging it had been mistakenly discharged. Defendants filed an answer, counterclaim, and third-party complaint against JPMorgan Chase Bank, NA, (Chase Bank)[2] and PHH Mortgage Corporation (PHH), which included a quiet title claim. Plaintiff filed an answer and crossclaim for attorney's fees pursuant to the mortgage agreement.

---

[2] Defendants alleged Chase Bank was the custodian/collateral holder of their loan since 2000. Chase Bank was dismissed from the case in April 2021 and is not participating in this appeal.

A-3404-22

In April 2021, the Chancery Division granted plaintiff's motion for summary judgment and reinstated the mortgage nunc pro tunc. During a conference that preceded the quiet title trial, Eleanor testified that plaintiff did not own the loan, that she and Ralph had made numerous phone calls to Wells Fargo over the years, and that Wells Fargo did not have any knowledge of their loan. She stated defendants wanted to know who the mortgagee was so that they could refinance. However, she also testified "[t]here's no mortgage to pay off." The Chancery Division later noted it found Eleanor credible and that she wanted to know what entity owned the loan so she could refinance it.

In July 2022, the Chancery Division conducted a bench trial regarding defendants' quiet title claim. Plaintiff alleged that it was the current owner of the mortgage. William Fay, an employee of Computer Share Trust Company (CSTC), the current agent for Wells Fargo, testified that Wells Fargo was the trustee of the investor trust. Fay had previously worked for Wells Fargo as a special account consultant before CSTC became Wells Fargo's agent. Fay testified that the original loan had been an Argent loan and that Argent had transferred the note and the mortgage to Ameriquest, which, in turn, transferred the note and mortgage into the trust in 2004. He testified plaintiff owned the loan.

5

Regarding loan payments, Fay testified the accounts receivable ledger reflected that defendants made every payment on their loan. He also testified the subsequent assignment of the mortgage to plaintiff was the last recorded assignment and that plaintiff was the entity entitled to receive payments under the loan. Plaintiff entered the recorded assignment into evidence, including the assignment from Ameriquest to plaintiff.

Plaintiff's next witness, Benjamin Verdooren, an employee of PHH's parent company, Ocwen Financial Corporation, provided supporting testimony that Argent serviced the loan from its origination until December 2004. Verdooren testified further that defendants' loan had been in litigation since 2009, and stated that PHH currently serviced defendants' loan, accepting payments on behalf of the trust, the owner of the loan. The loan was previously serviced by Ocwen Loan Servicing, which was merged into PHH. He testified the loan was not in default while Ocwen was servicing the loan.

Verdooren also provided details as to the location of the physical note, explaining that over the course of the loan, the original note might be held by the loan servicing company or by attorneys representing the investor trust during litigation. He also stated that as of the trial date, PHH was working to rescind the recorded discharge of defendants' loan, and the loan could not be refinanced

A-3404-22

as long as it was discharged. Verdooren testified that while it usually took about a month to address a mistakenly filed discharge, defendants opposed the motion for summary judgment to have the mortgage reinstated, and it had been about three to four years without correction as of the time of trial.

Plaintiff's attorney presented the court with the original October 4, 2004 note of $353,000 bearing Ralph's endorsement and maintained that the original note had been held by the trust since the end of 2004. Verdooren emphasized that the original note was transferred into the trust, thereby transferring ownership of the note to the trust and giving the trust the right to enforce the mortgage loan.

Defendants argued there was no legal holder of their mortgage, that the trust was not a legal trust and could not own the loan, and that they were prepared to present testimony from their prior attorney, David Wigfield, that Wells Fargo could not find any record of the mortgage. They alleged their loan was falsely noted as in default, despite having never missed a loan payment, and that this wrongful default status clouded the title and prevented them from refinancing the loan on numerous occasions. They sought a declaratory judgment that they were the true and rightful title owners of the property and were never in default on any loan. They also sought return of all loan payments

7

from 2000 to the present.

The Chancery Division found plaintiff's witnesses to be credible. It determined plaintiff was the last recorded assignee of the mortgage and note, that there were no other owners of the mortgage and note, and plaintiff, therefore, was the lawful owner of defendants' mortgage. It found the trust was legally valid and capable of owning, enforcing, and discharging mortgage loans. Additionally, the court found that plaintiff had not placed defendants' loan in default and ruled that plaintiff had proved its possession of the original note. Accordingly, the court dismissed the quiet title action with prejudice.

The court then ordered the transfer of plaintiff's claim for attorney's fees, as well as defendants' remaining counterclaims from the Chancery Division to the Law Division. On November 9, 2022, the Law Division subsequently granted plaintiff's summary judgment motion dismissing defendants' counterclaims for mortgage fraud, slander of title, and intentional infliction of emotional distress. The court also denied defendants' motion to amend their third-party complaint. Defendants' motion for reconsideration of the motion to amend was also denied. On June 22, 2023, the court awarded plaintiff $188,029 in attorney's fees, citing what it deemed unambiguous terms in the mortgage agreement.

A-3404-22

II.

A.

On appeal, defendants argue the Chancery Division erred by not allowing them to proceed first on their quiet title claim. They also assert the court violated their right to present their own evidence and testimony in support of their claim. As a result, they contend the court erred in dismissing their quiet title claim and finding that plaintiff was the legal owner of the loan.

The purpose of a quiet title action is to formally address ownership disputes between competing credible claims. Friedman v. Monaco & Brown Corp., 258 N.J. Super. 539, 543 (App. Div. 1992) (citing N.J.S.A. 2A:62-1). Under N.J.S.A. 2A:62-1,

> [a]ny person in the peaceable possession of lands in this state and claiming ownership thereof, may, when his title thereto, or any part thereof, is denied or disputed, or any other person claims or is claimed to own the same, or any part thereof or interest therein, or to hold a lien or encumbrance thereon, and when no action is pending to enforce or test the validity of such title, claim or encumbrance, maintain an action in the superior court to settle the title to such lands and to clear up all doubts and disputes concerning the same.

In asserting a quiet title claim, the claimant has the burden of establishing "the peaceable possession and claim of ownership which the law requires before he [or she] can call upon the defendant to show the validity of his [or her] claim,

9

and when so established the burden falls upon the defendant to make out his [or her] adverse claim." Ocean View Land Co. v. Loudenslager, 78 N.J. Eq. 571, 574 (E. & A. 1911). If an answering defendant has established proof of title, the claimant "must disclose [the claimant's own] title and show it to be a better title than that of the defendant[]." Ward v. Tallman, 65 N.J. Eq. 310, 315 (Ch. 1903).

After a bench trial, this court's scope of review is limited. Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "The trial court's factual findings are entitled to deference on appeal so long as they are supported by sufficient credible evidence in the record." Ibid. Indeed, this court will not "disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman, 205 N.J. at 169 (quoting In re Tr. Created by Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)).

Moreover, this court will review the ultimate decision in a quiet title action for an abuse of discretion. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 354

(1993). "In fashioning relief, the [c]hancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." Marioni v. Roxy Garments Delivery Co., 417 N.J. Super. 269, 275 (App. Div. 2010) (citing Salorio v. Glaser, 93 N.J. 447, 469 (1983)). An abuse of discretion occurs when a court's decision was "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Defendants argue the Chancery Division erred when it did not allow them to proceed first on their quiet title claim, and therefore, the Chancery Division's July 21, 2022 judgment was invalid. Generally, a trial court is "vested with broad discretion in . . . matters affecting the conduct and proceedings in a trial." Barber v. Shop-Rite of Englewood & Assocs., 393 N.J. Super. 292, 298 (App. Div. 2007). As for the appropriate conduct of the proceedings here, according to the court in Warner v. Smith,

> Where, under a bill to quiet title, complainant has established that he is in peaceable possession of the land in question, claiming to own the same, and that his title is denied or disputed, and no suit is pending to settle the validity of such hostile claim, the burden of establishing such adverse claim is on the person setting it up.

A-3404-22

[115 N.J. Eq. 572, 573 (E. & A. 1934) (quoting <u>Moore Securities Co. v. Schaffer</u>, 97 N.J. Eq. 296 (E. & A. 1925)).]

The issue before the court in a quiet title action is determining ownership of the property. <u>Friedman</u>, 258 N.J. Super. at 543. The Chancery Division needed to determine if plaintiff owned the note and had a secured interest in the property, as they were in the process of reinstating the accidentally discharged mortgage. Defendants, through the testimony of Eleanor at a prior conference, had already established they had been living peaceably on the property and claimed that plaintiff did not own their mortgage. Accordingly, once that prima facie case was established, the burden of proof shifted to the party, here plaintiff, challenging defendants' ownership of the property. <u>Warner</u>, 115 N.J. Eq. at 573.

In following that framework here, the Chancery Division permitted plaintiff to present its witnesses first, and subsequently provided defendants the opportunity to cross-examine those witnesses. Plaintiff had the burden to prove that it did in fact own the mortgage and did so by presenting proof of the original note. Therefore, although defendants' testimony was taken at an earlier hearing, we determine the court did not err in the order that it conducted the quiet title proceeding.

Ultimately, the procedural decisions the court made were consistent with

12

the established legal principles for equitable remedies and did not violate defendants' rights. For these reasons, the court did not misapply its discretion by permitting plaintiff to proceed first in the quiet title action, as defendants had already established their possession of the property and claimed ownership under N.J.S.A. 2A:62-1. Additionally, as discussed below, none of the evidence defendants claim they intended to present to the court would have refuted plaintiff's ownership of the mortgage; therefore, any such error would have been harmless.

Next, defendants assert that the July 21, 2022 judgment was invalid because the court did not consider all of the evidence they provided, including testimony from their prior attorney. N.J.R.E. 401 defines relevant evidence as evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (quoting N.J.R.E. 401). A trial court determines whether evidence is relevant by maintaining "focus on 'the logical connection between the proffered evidence and a fact in issue,'" or "the tendency of evidence to establish the proposition that it is offered to prove." Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). "Pursuant to N.J.R.E. 402, all relevant evidence is admissible, except as otherwise provided by the Rules of

Evidence or by law." Hrymoc v. Ethicon, Inc., 254 N.J. 446, 464 (2023). N.J.R.E 403 allows a trial court to exclude relevant evidence if its probative value is significantly outweighed by the risks of undue prejudice, confusion of issues, or misleading the jury. Griffin, 225 N.J. at 420.

A trial court's determination to admit or exclude evidence is "entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment." Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019) (alteration in original) (quoting Griffin, 225 N.J. at 413).

On the last day of trial, defendants asked the court if their prior real estate attorney, Wigfield, could testify regarding whether the lenders would accept the court's anticipated order to enable them to refinance their loan. A person marked "unidentified" in the transcript, but apparently Wigfield, interjected that he could not speak for the lender, but that the order should be sufficient. The court did not explicitly deny or approve defendants' request, but seemingly considered Wigfield's only statement at trial in its decision.

Defendants had already presented information regarding foreclosure-related fees and the mistaken default during the prior hearing and again at trial in the Chancery Division. Moreover, with regard to the mistaken default, the Chancery Division found that defendants were not in default and that their

mortgage loan had never been in default. The court stated at trial that it would give defendants clear title and the opportunity to finally refinance their loan and subsequently embodied the ruling in an order.

Defendants allege they were precluded from recounting "critical facts" that the court did not address, including the decade-long history of their inability to refinance, false declarations of default, and proof about wrongful default and foreclosure fees.

Defendants' arguments are unpersuasive. Notably, none of the evidence defendants claim the court failed to consider included defendants' proof of ownership of the property, and the court did not have to consider any additional proffered documents to reach its decision on the quiet title issue. The evidence defendants sought to offer was related to their counterclaims that were transferred to the Law Division. The documents were not relevant to the quiet title issue because they did not prove defendants' ownership of the property and could not disprove plaintiff's ownership of the note, which was the central issue in the quiet title claim. Therefore, the court did not err in excluding this evidence.

Defendants next argue that the Chancery Division decision should be reversed because the court did not allow Wigfield to testify. They allege that

Wigfield was prepared to testify that Wells Fargo had no record of the loan and that defendants were precluded from refinancing their mortgage. As with the evidence concerning defendants' counterclaims, this testimony was irrelevant to the quiet title claim; it did not prove that defendants owned the property. Moreover, the Chancery Division issued a comprehensive decision detailing the testimony and documentary evidence it relied upon in concluding plaintiff was the last recorded assignee of the note and mortgage and there were no other owners of defendants' mortgage. Therefore, the court did not abuse its discretion when it declined to hear Wigfield's testimony.

Finally, defendants argue the Chancery Division precluded them from introducing evidence that the trust was an illegal trust, and that plaintiff could not own the loan. They contend that "without a legally formed trust, there can be no legal holder trustee." However, they fail to adequately explain how that evidence, including a tax filing submitted to the court as an exhibit to their motion for reconsideration, would have defeated plaintiff's claim to ownership of the mortgage. In any event, the issue is moot because defendants have already refinanced their mortgage, and plaintiff no longer owns the loan. See Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (explaining that an

issue is moot "when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy").

In short, defendants failed to demonstrate the Chancery Division's factual findings were manifestly unsupported by competent relevant evidence. As a result, the court did not misapply its discretion in conducting the proceedings or finding that plaintiff owned the mortgage. Accordingly, we affirm the Chancery Division's judgment.

B.

Defendants argue the Law Division erred in granting plaintiff's motion for summary judgment, thereby dismissing their claims for mortgage fraud, slander of title, and intentional infliction of emotional distress. They further argue the court erred in denying their subsequent motion for reconsideration.

Where a trial court has granted a summary judgment motion, this court will review the decision de novo while applying the same standard. Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 540-41 (App. Div. 2019) (citing Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010)). It is for this court to determine "whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the

17

non-moving party.'" Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

To establish the elements of common law fraud, a plaintiff must demonstrate "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Port Liberte Homeowners Ass'n v. Sordoni Constr. Co., 393 N.J. Super. 492, 507 (App. Div. 2007) (quoting Gennari v. Weichert Realtors, 148 N.J. 582, 610 (1997)). Additionally, "[f]raud requires clear and convincing proof." McConkey v. AON Corp., 354 N.J. Super. 25, 45-46 (App. Div. 2002) (quoting Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 484 (App. Div. 1995)).

The court dismissed plaintiff's claims for mortgage fraud after finding that the Chancery Division's holding "prevent[ed] defendants from proving a fraud claim by clear and convincing evidence." Specifically, the Law Division found that plaintiff demonstrated, by presenting the accounts receivable ledger, which detailed every payment made on the loan, that it had never placed defendants' loan in default.

Defendants argue the court erred in dismissing their claims on summary

18

judgment because plaintiff knew about the default/foreclosure assignment but did nothing to remove it. Defendants contend that plaintiff's wrongful notation that their loan was in default prevented them from refinancing their loan. Specifically, defendants claim that the 2009 assignment of their loan to a trust indicated to potential lenders that there was a foreclosure, even though one did not occur. Defendants maintain they were denied refinancing on their loan by Wells Fargo in 2013 and 2014, and by other entities in 2013, 2015, and 2017, due to the erroneous default notation.

The court did not err in dismissing the claim for mortgage fraud because defendants did not show they were harmed by plaintiff making a misrepresentation that defendants, themselves, relied upon. The "standard for reliance, even indirect reliance, requires that the [party asserting the claim] have actually relied on the misstatement." Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000). However, defendants were not the individuals who relied on the information they allege was misrepresented. Defendants stated that several banks had denied their refinance applications. Therefore, even if defendants can establish there was a misrepresentation, they failed to demonstrate their reasonable reliance on it, as it would have been the potential lenders that relied on any representations plaintiff made. More fundamentally, as the Chancery

Division determined, plaintiff provided clear evidence of the loan's chain of assignment, and there is no indication that plaintiff made any willful attempts to prevent defendants from learning the identity of the mortgage owner. Moreover, the Chancery Division found defendants' loan was never placed in default. As a result, the claim for mortgage fraud was properly dismissed.

Defendants' claim for slander of title was also properly dismissed. "[T]he tort of slander of title requires a [claimant] to establish that defendant falsely published an assertion concerning [claimant]'s title which caused special damages to the [claimant] and that defendant acted out of malice, which was express or implied." Lone v. Brown, 199 N.J. Super. 420, 426 (App. Div. 1985). "Malice is defined as the intentional commission of a wrongful act without just cause or excuse." Ibid. (citing Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 152 (Ch. Div. 1951)).

The court found defendants failed to state a claim for slander of title because plaintiff was able to prove in the Chancery Division that its statements that it owned the mortgage were true. The court explained that plaintiff was a valid investor trust and owned the loan since 2004, and further noted that plaintiff was the "last assignee in the public record."

Defendants contend that plaintiff was liable for slander of title by falsely reporting a default, concealing the true owner of the mortgage, and ultimately preventing them from refinancing because of plaintiff's inaction on the mistaken default status.

Defendants' claim for slander of title could have succeeded only if they demonstrated that plaintiff made a false claim to a third party that caused them to suffer damages. Critically, even if defendants demonstrated that plaintiff made a false claim, they failed to establish that plaintiff acted with malice and that its actions were intentional. There was no indication that plaintiff intentionally misrepresented the status of the title to the banks with which defendants sought to refinance, and defendants provided no such evidence. Although the title issue was complicated by the mistaken discharge, plaintiff sought to reinstate the loan after learning of the discharge. Plaintiff's subsequent effort to reinstate the loan was intended to clarify title rather than make false claims about it.

Moreover, a significant aspect of defendants' quiet title claim was their assertion that there was no legal or identified holder of their loan. When the Chancery Division found that plaintiff was the lawful owner of the loan, that precluded any claims that plaintiff misrepresented facts as it related to its

21

ownership of the loan.  The quiet title action required plaintiff to furnish proof as to all claims it made regarding its ownership of the loan, which it did successfully.

With respect to defendants' intentional infliction of emotional distress claim, they must demonstrate that

> (1) [plaintiff] acted intentionally; (2) [plaintiff]'s conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) [plaintiff]'s actions proximately caused [them] emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."
>
> [Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (fourth alteration in original) (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)).]

The court found that because the Chancery Division's findings and conclusions undermined defendants' claims of fraud and slander of title, defendants could not then maintain that those same allegations amounted to extreme and outrageous conduct, particularly with respect to PHH's decision not to temporarily modify the loan during the quiet title claim.

Defendants argue they established a prima facie case of intentional infliction of emotional distress because plaintiff's actions in repeatedly failing

22

to rectify the wrongful default/foreclosure assignment was a malicious act that caused defendants serious emotional stress and that no medical proof was required to support the claim. They contend that plaintiff's failure to modify the loan while they asserted a quiet title claim constituted extreme and outrageous conduct that caused Ralph emotional distress, and that their involvement "in litigation over these and related issues for nearly twenty years . . . sp[oke] to the severity and substantial distress caused to them." Thus, defendants contend that the court erred in granting plaintiff summary judgment.

Defendants have not shown that plaintiff's conduct in allegedly mistakenly reporting their loan in default was intentional or amounted to extreme and outrageous conduct. Additionally, while defendants argue that plaintiff's failure to modify the loan during the claim for quiet title was outrageous conduct, plaintiff's witness testified that the loan could not be refinanced as long as it was discharged. Thus, defendants' own actions in opposing the reinstatement of the loan and subsequent claim to quiet title contributed to the delay in their ability to refinance. Given the circumstances surrounding defendants' inability to refinance, namely the mistaken discharge, plaintiff's conduct could not be regarded as intentional or "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

23

and utterly intolerable in a civilized community."  Moreover, defendants' claim was partially based on their assertion that plaintiff misrepresented the true owner of the loan; however, the Chancery Division made several factual findings and determined that plaintiff was the legal owner of the loan.

We further determine the court did not err in denying defendants' motion for reconsideration.  Pursuant to Rule 4:49-2, a motion for "[r]econsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice."  Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (first alteration in original) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).  Reconsideration is reserved for cases that fall within a narrow scope "in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."  Ibid.  (quoting D'Atria, 242 N.J. Super. at 401-02).  Furthermore, "[r]econsideration cannot be used to expand the record and reargue a motion. Reconsideration is only to point out 'the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'"  Cap. Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).  The trial court's denial of a motion for reconsideration is

24

reviewed for an abuse of discretion. <u>Cummings</u>, 295 N.J. Super. at 389 (citing <u>CNF Constructors, Inc. v. Donohoe Constr. Co.</u>, 57 F.3d 395, 401 (4th Cir. 1995)).

At the reconsideration hearing, the judge denied the motion because there was no evidence presented that it failed to consider, and there was no basis to change its decision. Defendants argue the court erred in denying their motion for reconsideration to reinstate their claims but do not contend that the court abused its discretion. Rather, defendants repeat the same arguments here they made in the trial court.

Given that a motion for reconsideration does not serve as an opportunity for defendants to relitigate the same issues in the hope of a better outcome, and since defendants did not establish the Law Division expressed its decision based upon a palpably incorrect or irrational basis, we likewise discern no reason to disturb the court's denial of the reconsideration motion.

In sum, the court neither erred in granting plaintiff summary judgment nor abused its discretion in denying reconsideration.

C.

Defendants next argue the Law Division erred in denying their motion to amend their counterclaim and third-party complaint to add Wells Fargo as a

third-party defendant. They argue that new evidence from one of plaintiff's witnesses during the Chancery Division trial indicated that plaintiff had no knowledge of defendants' refinance denials and that only Wells Fargo, not its trustee department, could deny an application to refinance.

The amendment of a pleading "is allowed only 'by leave of court which shall be freely given in the interest of justice.'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 500-01 (2006) (quoting R. 4:9-1). The decision to grant "a motion to file an amended complaint always rests in the court's sound discretion." Id. at 501 (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998)). A court that is tasked with exercising this discretion must engage in a two-step process that examines "whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid.

Although motions to amend "are ordinarily afforded liberal treatment, the factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation." Bonczek v. Carter-Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997). The denial of such a motion is "sustainable when made on the eve of trial, particularly if the motion seeks to add new parties." Pressler, Current N.J. Court

Rules, cmt 2.2.2 on R. 4:9-1 (2024). See Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994) (holding no abuse of discretion in denying late motion to add new claims and parties).

A trial court's exercise of discretion must amount to a clear abuse of that discretion before it will be disturbed on appeal. Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 506 (App. Div. 2003).

The court denied defendants' motion to amend their counterclaim and third-party complaint to add Wells Fargo as a third-party defendant because it found the proposed amended pleading did not "substantially change [defendants]' factual allegations." The court explained that the proposed amendment would be futile because it could not survive a summary judgment motion, the discovery end date had passed, and the quiet title claims had already been tried. It explained that the Chancery Division's "findings and conclusions [made] it impossible for [the] amendment to survive summary judgment." Moreover, the court noted the late attempt to amend would be prejudicial to plaintiff.

To permit a late amendment, defendants needed to show there were factual grounds to hold Wells Fargo liable. The four counts pled in the first amended third-party complaint remained almost entirely the same as to the quiet title,

mortgage fraud, slander of title, and the intentional infliction of emotional distress claims. Given the Chancery Division's decision on the quiet title claim, the Law Division noted defendants failed to demonstrate why adding Wells Fargo as a party would enable them to overcome a summary judgment motion. Moreover, the court expressed concern about the attempt to amend on the eve of trial after the close of discovery. We discern, under the facts presented here, the court did not misapply its discretion in denying defendants' leave to amend the third-party complaint.

D.

Defendants further argue the Law Division erred in entering a judgment in favor of plaintiff on its claim for contractual litigation fees.

Generally, "New Jersey disfavors the shifting of attorneys' fees." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (citing N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999)). However, a party that prevails on its claim can recover attorney's fees if "they are expressly provided for by statute, court rule, or contract." Ibid. (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)). Nevertheless, even where fee shifting is addressed by a contractual provision, "the provision should be strictly construed in light of our general policy disfavoring the award of

28

attorneys' fees."  Ibid. (citing N. Bergen Rex Transp., Inc., 158 N.J. at 570).

A trial court's award of attorney's fees will be disturbed on appeal only in the rarest of occasions and, in such circumstances, only when there is a clear abuse of discretion.  See id. at 386.  That said, if a party's entitlement to a fee award is dependent on contractual interpretation, the court will "enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Caruso v. Ravenswood Devs., Inc., 337 N.J. Super. 499, 506 (App. Div. 2001)).  Where "there are no material factual disputes, 'the interpretation of a contract is subject to de novo review by an appellate court.'"  In re Cnty. of Atl., 230 N.J. 237, 255 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011)).

Here, Section 9 of the mortgage agreement stated in pertinent part:

> If . . . (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include,

but are not limited to . . . (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Defendants argue their counterclaims for mortgage fraud, slander of title, and emotional distress were not the type of legal proceeding that Section 9 identified as matters in which the lender could add reasonable attorney's fees to the secured debt. They also maintain that an action to reinstate the mistakenly discharged mortgage was not a proceeding that the mortgage agreement identified as triggering the lender's right to attorney's fees. They further contend that plaintiff no longer had a remedy to obtain a money judgment against them because once they refinanced the loan, their debt secured by the security instrument no longer existed.

Plaintiff counters that the Law Division correctly awarded them attorney's fees. They assert that defendants' counterclaim, which contested plaintiff's attempt to correct a mistaken discharge, was a qualifying proceeding under

Section 9 of the contract, as plaintiff incurred attorney's fees to protect its secured interest. Plaintiff relies on 79-83 Thirteenth Avenue, Ltd. v. De Marco, 44 N.J. 525, 532 (1965), to argue that defendants' refinance and subsequent removal of the security did not extinguish plaintiff's pending legal claim for fees at law, maintaining that "[a] mortgagee can recover a borrower's debt both in equity and at law." Similarly, plaintiff cites our opinion in Hatch v. T & L Associates, 319 N.J. Super. 644, 647 (App. Div. 1999), arguing that our holding established its right to recover attorney's fees under a "customary attorney-fee clause in a promissory note." Plaintiff asserts that after the June 2022 hearing, its request for attorney's fees was transferred to the Law Division to be adjudicated with other money damage claims, thereby permitting it to pursue these claims at law in accordance with the Chancery Division's decision.

The Law Division noted that defendants filed a counterclaim against plaintiff and its loan servicer, asserting that "plaintiff did not and could not own [defendants'] mortgage loan." The court further indicated "[t]his clearly was an attack on plaintiff's security interest." The court recounted that the Chancery Division had determined there were no other owners of defendants' loan and that, "[f]or whatever the reason [defendants] have never been able to accept this fact. This may be the reason that they have been persiste[nt] in this lengthy and

31

protracted litigation forcing plaintiff to have to respond to their various litigation moves in order to protect it[]s secured interest."

The court recognized that an exception to the American Rule includes contractual provisions that govern fee shifting. It noted that Section 9 of the mortgage, which included an attorney's fees clause, was "clear and unambiguous." The court stated, under the plain language of Section 9, defendants' claim that plaintiff did not own and could not enforce its security interest in their property constituted a legal proceeding impacting plaintiff's interests under the security instrument, and "plaintiff [wa]s entitled to reasonable attorney's fees for protecting it[]s secured interest."

The court proceeded to calculate plaintiff's reasonable attorney's fees.[3] The court observed the litigation, which began in 2019 and proceeded through 2023, included extensive motion practice, discovery, and a trial in the Chancery Division. The court noted plaintiff's actions were necessitated by defendants' attempt to "extinguish plaintiff's $200,000 plus mortgage." The court ultimately awarded plaintiff $188,029 in fees.

The language of Section 9 indicates that fee shifting is implicated in legal

---

[3] Defendants only challenge plaintiff's entitlement to attorney's fees. They do not challenge the amount of the award.

proceedings that "might significantly affect [plaintiff]'s interest in the [p]roperty" or rights under the security instrument. Specifically, the provision includes proceedings such as "bankruptcy, probate, for condemnation or forfeiture, [or] for enforcement of a lien which may attain priority over this [s]ecurity [i]nstrument or to enforce laws or regulations."

We recognize plaintiff's suit to reinstate the mistaken discharge was not the type of proceeding that Section 9 contemplated, since defendants were not responsible for the accidental discharge that necessitated the action to reinstate the mortgage. However, defendants' counterclaims for mortgage fraud and slander of title do fall within the categories of proceedings that Section 9 contemplated, as they asserted these claims to challenge plaintiff's interest in the property. Therefore, the claims at issue constituted "a legal proceeding that might significantly affect" plaintiff's interest in the property under its "[s]ecurity [i]nstrument" and also involved plaintiff's "enforcement of a lien." Defendants' opposition to the mortgage reinstatement can be viewed as a challenge to plaintiff's secured interest in the property. Similarly, defendants' subsequent quiet title claim was a direct challenge to plaintiff's secured interest in the property, and fell within the scope of proceedings envisioned by Section 9.

We turn to whether plaintiff may still recover its fees since defendants

refinanced the mortgage prior to the Law Division awarding fees. Section 9 states that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." Moreover, Section 9 provides this debt "shall be payable . . . upon notice from Lender to Borrower requesting payment." Defendants refinanced their loan with Valley Bank in October 2022, following the Chancery Division trial and transfer of the attorney's fee claims to the Law Division. The Law Division denied defendants' motion to dismiss the claim for attorney's fees in November 2022 and ultimately awarded the fees in June 2023.

To accept defendants' argument that plaintiff could no longer recover attorney's fees because the mortgage was satisfied when they refinanced with another lender would ignore the reality of this protracted litigation and the fact that the Chancery Division could have addressed the attorney's fee issues, but instead transferred the claims to the Law Division for disposition. In doing so, the Chancery Division did not expect or intend that plaintiff's claims would be extinguished based on the quiet title action and defendants' ability to thereafter refinance the previously contested mortgage. That defendants refinanced the property during the litigation did not impact plaintiff's ability to recoup attorney's fees. Plaintiff should not be penalized because the Chancery Division

34

opted to bifurcate the quiet title action from defendants' counterclaims and plaintiff's contractual attorney's fee claim, thereby allowing time for defendants to satisfy plaintiff's mortgage. Plaintiff should not be prejudiced because defendants were fortuitously able to refinance in October 2022 prior to the Law Division ultimately ruling on the attorney's fee application. If the Chancery Division had addressed all of the claims, defendants would not have been able to argue that plaintiff must forego its attorney's fee application.

Furthermore, although Section 9 provides the attorney's fees "shall become additional debt" secured by the security interest, the provision is designed to protect the lender by securing the debt with the existing security instrument, not to limit the lender's ability to collect attorney's fees under these circumstances. We do not view the provision as limiting a lender's recovery of attorney's fees only where a security interest exists, as the following sentence of the agreement provides, "these amounts" shall be "payable" on notice from the lender requesting payment, notwithstanding the existence of a security interest.

The Chancery Division expected that the Law Division would address defendants' counterclaims and plaintiff's attorney's fee application. The Chancery Division found that defendants had clean title and thus could refinance at some point. However, there was no suggestion that if the refinancing occurred

during the course of active litigation, plaintiff would be precluded from pursuing its attorney's fee application. Rather, the court preserved the claim because it was bifurcated from the quiet title claim with the expectation that it would be adjudicated, along with defendants' counterclaims, in the Law Division, given that plaintiff had an interest in the property when the fees initially arose. Defendants could not circumvent the attorney's fee claim under the circumstances here, where litigation was ongoing.

To the extent we have not addressed any other arguments raised by defendants, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3404-22